SUMMONS ISSUED

FILED
CLERK
2011 MAR 21  PM 4:31

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Leilani Torres | § | |
| On behalf of herself and all others similarly situated | § | Case No.: _____ |
|     Plaintiff | § | |
| | § | |
| v. | § | |
| Toback, Bernstein & Reiss LLP | § | |
| Loraine Campbell | § | |
| Arthur M. Toback | § | |
| Brian K. Bernstein | § | |
| Leonard S. Reiss | § | |
| John Does 1 – 10 | § | |
|     Defendants | § | |

WEINSTEIN, J.

POHORELSKY, M.J.

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff LEILANI TORRES, on behalf of herself and all others similarly situated, brings

suit against defendants for their violations of the Fair Debt Collection Practices Act, 15 U.S.C.

1692, et seq., (the "FDCPA"), and in support would show as follows.

### A.  JURISDICTION AND VENUE

1.  The Court has federal question jurisdiction over the lawsuit because the action arises

under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, et seq., (FDCPA).  Jurisdiction of

the Court arises under 28 U.S.C. 1331 in that this dispute involves predominant issues of federal

law, the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202.

2.  Venue in this District is proper because all or a substantial part of the events or omissions

giving rise to their claims occurred in Kings County, New York.

3.  Plaintiff is an individual who resides in Kings County, New York.

4.  Defendant TOBACK, BERNSTEIN & REISS LLP is a limited liability partnership

organized under the laws of the State of New York, with its principle office at 15 West 44th Street, 12th Floor, New York, New York 10036. It may be served by and through the New York Secretary of State, Department of State's office at One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. The Secretary of State may then forward a copy of the summons and complaint to the address listed with its office, Toback, Bernstein & Reiss, LLP, 500 Fifth Ave., New York, New York, 10110-0095.

5.      Defendant Loraine Campbell is a natural person and, on information and belief, a resident of the State of New York. This suit arose out of Ms. Campbell's actions in New York. She may be served at the principal place of business, Toback, Bernstein & Reiss, LLP, 15 West 44th Street, 12th Floor, New York, New York 10036, or wherever she may be found.

6.      Defendants Arthur M. Toback, Brian K. Bernstein, and Leonard S. Reiss are natural persons and, on information and belief, a resident of the State of New York. Said persons are partners at Toback, Bernstein & Reiss, LLP. This suit arose out of said persons' actions in New York. They may be served at their principal place of business, Toback, Bernstein & Reiss, LLP, 15 West 44th Street, 12th Floor, New York, New York 10036, or wherever they may be found.

7.      All conditions precedent necessary to maintain this action have been performed or have occurred.

## B.   STATEMENT OF FACTS

8.      Plaintiff went to Columbia University and took out a series of small Perkins loans from 1982 to 1986 totaling $6,200.

9.      The Perkins Loan Program (formerly National Direct Student Loans) provides student

loans to students with exceptional financial need.

10.     By federal law, the interest rate on Perkins loans is limited to 5 percent, and that term is part of every Perkins loan contract, including those of the plaintiff.

11.     All of plaintiff's Perkins loans contracts stated that, if the account was placed for collections, any collection costs must be "reasonable."  This language was required by federal law for the period when plaintiff's Perkins loans contracts were entered.

12.     All of plaintiff's Perkins loans contracts stated that the reasonable collection costs could not exceed 25 percent of the unpaid principal and interest if the agency seeking to collect was governed by the Fair Debt Collection Practices Act. This language was also required by federal law for the period when plaintiff's Perkins loans contracts were entered.

13.     All defendants are debt collectors as that term is defined in the FDCPA.

14.     Defendant Toback, Bernstein & Reiss LLP (the "LLP") is a law firm that regularly seeks to collect consumer debts.

15.     The LLP has filed hundreds of lawsuits on behalf of Columbia University in the last few years seeking to collect Perkins student loans and alleged unpaid tuition.

16.     Arthur M. Toback ("Toback") is an attorney and partner of the LLP. Toback signed documents simulating court papers sent by the LLP to Plaintiff.

17.     Loraine Campbell is an individual identified as the "paralegal" for the LLP. Campbell's signature appears on the signed dunning letters sent by the LLP to Plaintiff.

18.     Defendants John Does 1 – 10 are individuals working at the LLP other than Campbell

3

who were involved in the debt collection violations that give rise to this complaint. For example, the initials on the lower left hand section of the collections letters going out under the signature of Campbell suggest the letter was drafted by someone other than Campbell.

19.     Each of the partners of the firm, Arthur M. Toback, Brian K. Bernstein and Leonard S. Reiss (collectively, "the partners") are jointly and severally liable for the debt collection violations of the LLP. The partners made the debt collection attempts directly and indirectly through the LLP. On information and belief, the partners made the decisions that form the basis of this complaint. On information and belief, the partners develop the debt collection operations and policies of the LLP, and exercise control over the operation and management of the collection activities of the LLP. On information and belief the partners exercised supervision and control of Campbell and John Does 1 – 10, and are thus liable for their FDCPA violations.

20.     On March 23, 2010 the LLP sent Plaintiff a dunning letter demanding payment. A true and correct copy of the letter is attached as Exhibit A.[1] All exhibits referenced in this complaint are attached and incorporated by reference.

21.     The letter was signed by Loraine Campbell as "paralegal" for the firm.

22.     The letter stated, "The principal balance due and owing to date is $12.359.02 plus accrued interest of $799.26, [for] a total of $13,158.28. Interest is accruing that the rate of 9% annually, or $92.69 monthly."

23.     These representations were false, deceptive and misleading.

---

[1] All of the written communications from the LLP list plaintiff's account number, which includes her social security number. Therefore, the account numbers have been redacted from the exhibits attached to this complaint. They are otherwise true and correct copies.

Last printed 3/21/2011 4:05:00 PM

24.    The "prior principal balance" claimed was more than *double* the actual principal amount of the loan, $6,200.

25.    On information and belief, the "prior principal balance" rolled in a secret collection fee over 40 percent the actual total unpaid principal and interest.

26.    The collection fee secretly rolled into the "prior principal balance" was not incurred by Columbia or the LLP and was unearned, unreasonable, unconscionable, and bore no relationship – reasonable or otherwise – to any damages incurred by Columbia or the LLP for any goods or services provided by Columbia or the LLP for any collection services performed by or on behalf of Columbia or the LLP, either to plaintiff's account specifically or in aggregate for the entire defaulted student loan portfolio.

27.    Attached to the letter of March 23, 2010 was what appeared to be in a pleading a lawsuit of <u>The Trustees of Columbia University in the City of New York v. Leilani M. Torres</u>, Civil Court of New York. The pleading, a supposed stipulation, was signed by Arthur Toback. A true and correct copy of this document is attached as with <u>Exhibit A</u> and is incorporated by reference.

28.    The stipulation contains a plethora of misrepresentations, including, without limitation, the following. The stipulation stated that a lawsuit had been filed against Torres, when no such suit was filed. The stipulation stated that interest rate on the loan was 9 percent when it was 5 percent. The stipulation stated if Torres did not make timely monthly payments of $150, that the LLP could enter judgment by default, and to do so without notice; and would also obtain costs and disbursements, when the LLP was not entitled to such amounts as no suit had in fact been filed.  On information and belief, it is the pattern and practice of defendants to send written

communications to consumers that contain the misrepresentations listed in this paragraph.

29.     Plaintiff in fact made payments on the account because of the false, deceptive and misleading representations of defendants.

30.     The amounts the LLP claimed to be due did not credit all payments plaintiff made on the account.

31.     The LLP sent plaintiff monthly billing statements like the statement dated April 1, 2010, attached as Exhibit B.  These billing statements were sent regularly for months within a year of the filing of this lawsuit.

32.     The April 1, 2010 statement stated "prior principal balance" of "$12,359.02" when in fact the principal balance of all of the loans together was just $6,200. The statement stated an "accrued interest" of $949.26 at a 9 percent rate of interest, when in fact, under the terms of the contract and under federal law, the rate is 5 percent.

33.     Each collecting letter and billing statement defendants sent to plaintiff as to the "principal balance" rolled in a hidden collection fee that was no less than 40 percent greater than even the inflated interest at 9 percent, plus the actual $6,200 principal amount of the combined loans.

34.     Each monthly billing statement the LLP sent demanded payment, but failed to include the disclosures required by 15 U.S.C. 1692e(11) that the communication is from a debt collector.

35.     On May 19, 2010 the LLP sent plaintiff a collections letter (Exhibit C), signed by Campbell, stating:

> If we fail to receive your check in the sum of $150 within ten days, ***judgment will be entered.*** In that event you will be liable for additional interest, costs and disbursements. The entry of judgment will be of public record and available to credit reporting agencies.

6

(emphasis added)

36.     As the LLP had never filed suit, their threat to enter judgment within 10 days is a threat to take an action which they could not under law.

37.     On information and belief, it is the pattern and practice of defendants to represent to consumers that they have filed suit when they have not; to threaten to enter judgment when they have not filed suit; or to enter judgment or take other actions within a certain number of days when they are prohibited by law from doing so within the time period threatened.

38.     On May 20, 2010 (Exhibit D) and several times thereafter, the LLP sent plaintiff collection letters signed by Campbell stating, "If we fail to receive your check in the sum of $150 within ten days, we will be forced to pursue other efforts."

39.     In fact, no "other" collection attempts were made or, on information and belief, intended. The LLP simply sent the same collection letters.

40.     It is the pattern and practice of the LLP to send out collection letters demanding a sum certain within a certain number of days with the threat that "other" collection efforts "will be" pursued when in fact no other collection methods are pursued or intended to be pursued.

41.     It is the purpose of the LLP to send these letters to intimidate consumers to make immediate payments on alleged debts.

42.     On July 30, 2010, the LLP sent plaintiff a collections letter (Exhibit E) under the signature of Campbell stating, "If we do not receive your good check for $600...on or before August 5, 2010 Suit will be instituted."

43.     This is a false threat of litigation.

7

44.     The LLP did not file suit and, on information belief, had no intention of filing suit.

45.     On information and belief, it is the pattern and practice of the LLP to threaten to file suit with no intention of doing so for the purpose of intimidating consumers into paying alleged debts.

46.     After repeated demands for an accounting of the alleged debt, the LLP sent to plaintiff, through her attorney Ahmad Keshavarz, the letter dated January 10, 2011 (Exhibit F).

47.     For the first time, the LLP disclosed the hidden 40 percent collection fee it had been rolling into what it labeled as the "principal balance" in collection letters directly to plaintiff.

48.     For the first time, the LLP represented the interest rate at 5 percent, the rate required by federal law and expressly provided for in the loan contract, instead of the inflated 9 percent interest rate previously claimed.

49.     Even with the 40 percent collection fee, the "total due" amount according to the January 10, 2011 accounting was $7,568.50. In contrast, $13,910.18 was the total due according to the billing statement sent just 9 days earlier directly to the plaintiff. The January 1, 2011 statement (Exhibit G), stated an amount due that was 83 percent greater because it was based on the false assumption the debt was growing at a 9 percent rather than a 5 percent interest rate.

50.     No doubt the LLP was in a rush to tell Ms. Torres directly how much of a better deal she was getting under their new math because on February 1, 2011 (Exhibit H) the LLP made an end run around Ms. Torres' counsel and sent to Ms. Torres directly a billing statement, stating an amount due based on a 5 percent rate of interest, and demanding payment of $1,350.00. In addition to violating New York Disciplinary Rules, the ex parte demand for payment also

8

violated several provisions of the Fair Debt Collection Practices Act, including 15 U.S.C. 1692b(6) and 1692c(a)(2).

51.    On February 25, 2011 (<u>Exhibit I</u>),   defendants sent plaintiff, this time through her counsel, a letter demanding payment. In the letter the LLP states that it is entitled to charge plaintiff a 40 percent collection fee because of the "rules and regulations of the Perkins Loan program." The LLP makes specific reference to 34 CFR 674.47, although the LLP apparently meant to refer to 34 CFR § 674.45.

52.    Assuming, arguendo, 34 CFR § 674.45, which was enacted in 1987, controlled on the Perkins loans plaintiff took out from 1983 – 1986, the LLP still had no right to roll in a hidden of 40 percent into the "principal balance."

53.    Rather, any collection cost must still be a "reasonable" cost that was "incurred," and "shall" be based on either the "actual costs incurred" with regarding to the individual borrower's loan, or the "average costs incurred" for similar actions taken to collect loans in similar stages of delinquency. 34 CFR § 674.459(e)(2) & (3).

54.    However, the hidden 40 percent collection fee sought by defendants was greater than the "actual cost" Columbia incurred in attempting to collect on Ms. Torres' individual loans.

55.    The hidden 40 percent collection fee sought by defendants was also greater than the "average costs" Columbia incurred for similar collection efforts similar in the similar stages of delinquency.

56.    The LLP is a debt collector that is required to be licensed by the New York City Department of Consumer Affairs, pursuant to NYCAC § 20-490. However, the LLP refuses to

comply with the licensing requirement, a condition precedent to being able to legally collect an alleged consumer debt from a New York City resident.

57.     The LLP does not now have, has never had, and has never applied for a license. The LLP's refusal to obtain licensing harms New York City consumers, including Plaintiff. The licensing requirement forces debt collectors to disclose whether any of the individual shareholders or officers have been convicted of a crime; and to disclose whether they are currently subject to a lawsuit, have had judgments rendered against them or have outstanding unpaid judgments.

58.     The LLP would also be required to disclose to all consumers that they are regulated by the NYC Department of Consumer Affairs, and to disclose their license number. This would at least disclose that the consumer could complain to a specific department for the debt collection violations of the LLP.

59.     Obviously, the licensing process would help flag rogue, abusive debt collectors who have repeatedly violated the FDCPA. The LLP's willful refusal to be licensed is an attempt to reduce the ability to be held accountable for their FDCPA violations, to be screened out if they have repeatedly violated the FDCPA, and thus to attempt to gain an unfair competitive advantage over its legitimate debt collection competitors. The FDCPA regarding the failure to be licensed is brought solely against the LLP, and not against the other defendants.

### C.     Class Action Allegations

60.     Under Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

**a.** Based on the fact that the collection letters at the heart of this litigation are mass-mailed form letters, the classes are so numerous that joinder of all members is impractical.

**b.** There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. These common questions include whether Exhibit A - I violate the FDCPA.

**c.** The claims of Plaintiff are typical of the class members' claims.  All are based on the same facts and legal theories.  The only individual issue is the identification of the consumers who received the written communications, (i.e., the class members), which is a matter capable of ministerial determination from the Defendants' records.

**d.** Plaintiff will fairly and adequately represent the class members' interests.  All claims are based on the same facts and legal theories and Plaintiff's interests are consistent with the interests of the class.

**e.** Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims.

61.     A class action is superior for the fair and efficient adjudication of the class members' claims.

62.     Congress specifically envisions class actions as a principal means of enforcing the FDCPA. See 15 U.S.C. § 1692k.

63.     The class members are generally unsophisticated individuals unaware of the protections afforded them by the FDCPA, which rights will not be vindicated in the absence of a class action.

64.     Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying

11

standards for the parties and would not be in the interest of judicial economy.

65.     If the facts are discovered to be appropriate, Defendant will seek to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

66.     This Count is brought by Plaintiff, individually, and on behalf of a class consisting of all persons who, according to Defendant's records:

    **a.**  have mailing addresses within New York State; and

    **b.**  within one year before the filing of this action; and

    **c.**  were sent a written communication seeking to collect a Perkins loan:

        (1)  That was in a form materially identical or substantially similar to the letter sent to Plaintiff, attached as Exhibit A - I; or

        (2)  That represented a "principal balance" or "prior principle balance" that rolled in a hidden collection fee; or

        (3)  That represented an interest rate was any amount greater than 5 percent;

        (4)  That included a collection costs that was than greater either i) the "actual costs incurred" with regarding to the individual borrower's loan, or 2) the "average costs incurred" for similar actions taken to collect loans in similar stages of delinquency; or

        (5)  That represented a lawsuit had been filed when a lawsuit had not been filed; or

        (6)  That represented that default judgment would be entered when no lawsuit had been filed;

Last printed 3/21/2011 4:05:00 PM

**d.** and the written communications was not returned by the postal service as undelivered.

67.     Written communications, such as those sent by Defendant, are  to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

## COUNT # 1: Violations of the federal Fair Debt Collection Practices Act.

68.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

69.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). See also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir.2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope"). Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance").

70.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because she was alleged to owe a debt.

71.     The obligation alleged by defendants to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the student loan debt was incurred primarily for family, personal or

household purposes.

72.     Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6). The LLP, largely under the signature of Toback, has filed hundreds of collections lawsuits seeking to collect Perkins loans and tuition for Columbia. The LLP sends out hundreds if not thousands of collection letters for these debts, many under the name of Campbell and many ghost written by the John Does whose initials appear on the letter. The LLP, Campbell, and the John Doe defendants regularly make calls to and receive calls from consumers in an attempt to collect a debt.  The partners made the debt collection attempts directly and indirectly through the LLP. On information and belief, the partners made the decisions to take the actions that form the basis of this complaint. On information and belief, the partners develop the debt collection operations and policies of the LLP, and exercise control over the operation and management of the collection activities of the LLP. On information and belief the partners exercised supervision and control of Campbell and John Does 1 – 10, and are thus liable for their FDCPA violations.

73.     The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

74.     Defendant violated the following sections of the FDCPA: 15 U.S.C. 1692b, 1692c, 1692d, 1692e, and 1692f. By way of example and not limitation defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount or legal status of the debt; misrepresenting the services rendered or

compensation which may be lawfully received; threatening to take and actually taking an action prohibited by law, or which is not intended to be taken; the use or distribution of any communication which simulates or is falsely represented to be a document authorized, issued or approved by any court, official or agency, or which creates a false impression as to its source, authorization or approval; using false, deceptive or misleading representations or means; using a unfair or unconscionable means; the failure to disclose in any communication that the communication is from a debt collector; the false representation that documents are legal process; using unfair or unconscionable means; collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and communicating with a consumer when the debt collector knows or should know the consumer is represented by counsel.

75.    Defendant's actions have damaged plaintiff and those similarly situated as plaintiff.

## D.    JURY DEMAND.

76.    Plaintiff demands a trial by jury.

## E.    PRAYER

77.    For these reasons, Plaintiff asks for judgment against Defendant for the following:

      i.    The above referenced relief requested;

      ii.    Statutory damages pursuant to 15 U.S.C. § 1692k;

      iii.    Actual, economic, and statutory damages within the jurisdictional limits of the court;

iv.     Attorney fees and costs;

v.      A declaration that defendants violated the FDCPA as alleged in the complaint;

vi.     Prejudgment and post-judgment interest as allowed by law;

vii.    General relief;

viii.   All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
        March 21, 2011

Respectfully submitted,

/s/

Ahmad Keshavarz
ATTORNEY FOR PLAINTIFF
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com


Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: 212-248-7906
Fax: 212-248-7908
E-mail: brian@bromberglawoffice.com

16

# EXHIBIT A:

**The March 23, 2010 collections letter and enclosed documents simulating court papers.**

# TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET

TWELFTH FLOOR

NEW YORK, NEW YORK 10036

——

(212) 869-2300

FACSIMILE: (212) 869-2303

ARTHUR M. TOBACK
BRIAN K. BERNSTEIN*
LEONARD S. REISS
CONNIE L. MILLIGAN†

*ALSO ADMITTED IN NJ
†ALSO ADMITTED IN IL
——
MARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 630, P.O. BOX 1180
FORT LEE, NEW JERSEY 07024
——

(201) 461-1135

March 23, 2010

*rec'd 3/27/10 Sof*

Ms. Lelani M. Torres
324 Livingston Street, Apt. 1
Brooklyn, NY 11217-1035

      Re:    Columbia University/Lelani M. Torres

Dear Ms. Torres:

    You have been making token monthly payments of **$150.00**. In accordance with the Stipulation you executed dated March 5, 2008 (copy enclosed) renegotiations for increased monthly payments were to be made on or before February 10, 2010.

    The principal balance due and owing to date is **$12,359.02** plus accrued interest of **$799.26**, a total of **$13,158.28**. Interest is accruing at the rate of 9% annually, or **$92.69** monthly.

    **AT THIS TIME, WE MUST INSIST THAT ARRANGEMENTS BE MADE FOR A SIGNIFICANT INCREASE IN YOUR MONTHLY REPAYMENT SCHEDULE.**

    Accordingly, we suggest that the minimum monthly payment be **$350.00**.

    Please contact the undersigned within ten (10) days to arrange an increase in your monthly payment schedule to avoid this office proceeding in accordance with the stipulation you executed.

    Please give this matter your immediate attention.

    This notice is an attempt to collect a debt. Any information obtained will be used for that purpose.

                      Very truly yours,

                      Loraine Campbell
                      Paralegal

LC:mr



S:\DOCS\LC-Columbia\Token Monthly Payment\2010\Torres, Lelani M..doc

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
THE TRUSTEES OF COLUMBIA UNIVERSITY                    Index No.
IN THE CITY OF NEW YORK,

                    Plaintiff,

    - against -                                        **STIPULATION**

LEILANI M. TORRES

                    Defendant.
------------------------------------------------------------X
**ACCOUNT NUMBER:** NDSL-36301-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

      IT IS HEREBY STIPULATED AND AGREED, by and between the defendant herein and the attorney for the plaintiff as follows:

    1.     Defendant appears in this action and acknowledges due and proper service of the summons and complaint herein.  The summons and complaint may, at the plaintiff's option, be filed **NUNC PRO TUNC** in the event of defendant's default in any provision hereof.

    2.     Defendant shall pay the plaintiff the sum of **$14,683.72** being the sum due herein plus interest at the rate of (9%) nine percent per annum as follows:

> **$150.0**0 DUE ON OR BEFORE **MARCH 15, 2008; AND** A LIKE SUM OF **$150.00** ON THE FIRST DAY OF EACH & EVERY SUCCEEDING MONTH THROUGH AND INCLUDING **FEBRUARY 1, 2009;** RENEGOTIATIONS FOR INCREASED MONTHLY PAYMENTS ON OR BEFORE **FEBRUARY 10, 2009;** SUCH RENEGOTIATIONS SHALL BE IN ACCORDANCE WITH COLUMBIA UNIVERSITY'S STANDARDS REGARDING HARDSHIP ARRANGEMENTS; FAILURE TO RENEGOTIATE, IN GOOD FAITH, WILL RESULT IN DEFAULT HEREUNDER, EXCEPT THAT DEFAULT SHALL NOT OCCUR SOLELY DUE TO DEFENDANT'S REFUSAL TO AGREE TO A HIGHER MONTHLY PAYMENT AMOUNT; AND IN ANY EVENT MINIMUM PAYMENT OF **$150.00** MONTHLY SHALL CONTINUE FOR AN ADDITIONAL (12) TWELVE MONTHS.

Page 2.

## THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK
## VS.  LEILANI M. TORRES

     3.     All payments are first applied to accrued interest, monthly interest charge and last to principal balance.  All payments shall be mailed or delivered to TOBACK,  BERNSTEIN & REISS, LLP, 15 West 44th Street – 12th Floor,  New York, New York 10110-0095.  Payments shall be made payable to TOBACK, BERNSTEIN & RESIS LLP., as attorney for Columbia University.

     4.     In the event any of the aforesaid payments are not made in accordance with the foregoing, plaintiff may, if said default is not cured within ten days after service by regular mail of a notice to cure to defendant enter judgment by default without further notice or application to the court, for the amount demanded in the complaint, with interest, costs and disbursements after crediting defendant with any sums actually paid pursuant hereto.

     5.     Upon payment in full a Stipulation of Discontinuance with prejudice will be filed with the Court.

Dated: New York, New York
       March 5, 2008


LEILANI M. TORRES
DEFENDANT

TOBACK, BERNSTEIN & REISS, LLP
BY: ARTHUR M. TOBACK
ATTORNEYS FOR PLAINTIFF

**EXHIBIT B:**

**The April 1, 2010 collections letter.**

# TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET

TWELFTH FLOOR

NEW YORK, NEW YORK 10035

—

(212) 869-2300

FACSIMILE: (212) 869-2303

ARTHUR M. TOBACK
BRIAN K. BERNSTEIN*
LEONARD S. REISS

*ALSO ADMITTED IN NJ

MARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 630, P.O. BOX 1160
FORT LEE, NEW JERSEY 07024
—

(201) 461-1135

04/01/2010

Leilani M. Torres
324 Livingston Street Apt.1
Brooklyn, New York  11217-1035

| Date | Description | Amount |
|---|---|---|
| 03/02/2010 | Prior Principal Balance | 12,359.02 |
| 03/02/2010 | Accrued Interest | 949.26 |
| 03/05/2010 | Payment Made | -150.00 |
| 04/01/2010 | Payment Due, per sched. | 150.00 |
| 04/01/2010 | Interest Charge @   9.00% | 92.69 |
| | New Principal Balance | 12,359.02 |
| 04/01/2010 | Payment Due | 150.00 |

======================================================================

**PLEASE RETURN THIS PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE AND
INCLUDE ACCOUNT# ON YOUR CHECK-MADE PAYABLE TO TOBACK,BERNSTEIN & REISS,LLP**

PAYMENT DUE : $  150.00
AMOUNT ENCLOSED : $

Leilani M. Torres

.

# EXHIBIT C:

**The May 19, 2010 collections letter.**

## TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET

TWELFTH FLOOR

NEW YORK, NEW YORK 10036

—

(212) 869-2300

FACSIMILE: (212) 869-2303

RTHUR M. TOBACK
RIAN K. BERNSTEIN*
:ONARD S. REISS
ONNIE L. MILLIGAN†

:LSO ADMITTED IN NJ
:LSO ADMITTED IN IL

—

ARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 630, P.O. BOX 1160
FORT LEE, NEW JERSEY 07024

—

(201) 461-1135

DATE: 05/19/2010

*rec'd 5/23/10*

Ms. Leilani M. Torres
324 Livingston Street Apt.1
Brooklyn, New York  11217-1035

      Re: COLUMBIA UNIVERSITY -  Leilani M. Torres
          Amount Due: $  150.00

Dear Ms. Torres :

     Please be advised that on  03/05/2008 you entered into a stipulation providing for monthly payments of $  150.00 . Your account is now $  150.00 in arrears.

     If there is an exceptional reason why your account is in arrears please let us know. Otherwise, if we fail to receive your check in the sum of $  150.00  within ten days, judgment will be entered.  In that event you will liable for additional interest, costs and disbursements.  The entry of judgment will be of public record and available to credit reporting agencies

     PLEASE BE ADVISED YOUR CHECK SHOULD BE MADE PAYABLE TO TOBACK,BERNSTEIN & REISS LLP.

     This notice is an attempt to collect a debt.  Any information obtained will be used for that purpose.

             Very truly yours,

             Loraine Campbell
             Legal Assistant

NOTICE OF DEFAULT

# EXHIBIT D:

**The May 20, 2010 collections letter.**

# TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET

TWELFTH FLOOR

NEW YORK, NEW YORK 10036

———

(212) 869-2300

FACSIMILE: (212) 869-2303

ITHUR M. TOBACK
IIAN K. BERNSTEIN*
ONARD S. REISS
)NNIE L. MILLIGAN†

LSO ADMITTED IN NJ
LSO ADMITTED IN IL

———

ARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 630, P.O. BOX 1160
FORT LEE, NEW JERSEY 07024

———

(201) 461-1135

May  20 , 2010

*RECID 5/23/10*

Ms. Leilani M. Torres
324 Livingston Street Apt.1
Brooklyn, New York  11217-1035

        Re: Columbia University 
        Amount Due: $ 150.00

Dear Ms. Torres :

    Please be advised that on  03/05/2008 you entered into a stipulation providing for monthly payments of $ 150.00 . Your account is now $ 150.00 in arrears.

    If there is an exceptional reason why your account is in arrears please let us know. Otherwise, if we fail to receive your check in the sum of $ 150.00  within ten days, we will be forced to pursue other efforts to resolve this debt. We regret that this may be necessary, but we must protect our client's interest.

    This notice is an attempt to collect a debt. Any information obtained will be used for that purpose.

              Very truly yours,

              Loraine Campbell
              Paralegal

LC/b

NOTICE OF DEAFULT

# EXHIBIT E:

**The July 30, 2010 letter collection letter**

# TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET

TWELFTH FLOOR

NEW YORK, NEW YORK 10036

————

(212) 869-2300

FACSIMILE: (212) 869-2303

ARTHUR M. TOBACK
BRIAN K. BERNSTEIN*
LEONARD S. REISS
CONNIE L. MILLIGAN†

*ALSO ADMITTED IN NJ
†ALSO ADMITTED IN IL

————

MARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 630, P.O. BOX 1160
FORT LEE, NEW JERSEY 07024

————

(201) 461-1135

July 30, 2010

Ms. Lelani M. Torres
324 Livingston Street, Apt. 1
Brooklyn, NY  11217-1035

   **Re: Columbia University/Lelani M. Torres**

Dear Ms. Torres:

  Perhaps there is some misunderstanding as to how your account is to be paid; payments of $150.00 each, are due **on the 1ˢᵗ day of each and every succeeding month.**

  Your account is in arrears $450.00 covering payments of $150.00 due on May 1, 2010 through and including July 1, 2010.   Please bear in mind that installment payments are accepted **strictly as a matter of courtesy and forbearance.**

  If we do not receive your good check for **$600.00** (includes payment for August 1, 2010) on or before August 5, 2010  **Suit will be instituted.**

  This office is attempting to collect a debt and any information obtained will be used for that purpose.

        Very truly yours,

        Loraine Campbell
        Legal Assistant

LC:mr


S:\DOCS\LC-Columbia\Arrears 4\Suit Instituted\2010\Torres, Lelani M..doc

# EXHIBIT F:

**The January 10, 2011 collection letter with accounting**

## TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET
TWELFTH FLOOR
NEW YORK, NEW YORK 10036
———
(212) 869-2300
FACSIMILE: (212) 869-2303

ARTHUR M. TOBACK
BRIAN K. BERNSTEIN*
LEONARD S. REISS
*ALSO ADMITTED IN NJ
———
MARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE
2050 CENTER AVENUE
SUITE 630, P.O. BOX 1160
FORT LEE, NEW JERSEY 07024

January 10, 2011

Ahmad Keshavarz
16 Court Street, 26th floor
Brooklyn, NY 11241

Re:     Columbia University/Lelani M. Torres

Dear Mr. Keshavarz:

In accordance with your request, enclosed is a complete breakdown of Ms. Torres' Perkins Loan.  Also enclosed are copies of the Promissory Notes executed by her.

After you have had a chance to review the documents, please contact the undersigned to arrange a repayment plan.

This notice is an attempt to collect a debt.  Any information obtained will be used for that purpose.

Very truly yours,

Loraine Campbell
Legal Assistant

LC:mr

S:\DOCS\LC-Columbia\Attorney Letters\Keshavarz. Ahmad.doc

## STATEMENT OF ACCOUNT

## LELANI M. TORRES

## NDSL/FEDERAL PERKINS LOAN



| Loan Awarded | Amount | |
|---|---|---|
| Loan Awarded   $6,200.00 | $6,200.00 | |
| Total Awarded | $6,200.00 | |
| Total Principal Due | $1,250.00 | |
| Principal Paid | 353.74 | |
| Principal Due | $5,846.26 | $5,846.26 |
| Total Interest accrued @ 5% | $ 3,410.00 | |
| From 1/2/00-1/1/11 | $ 3,047.51 | |
| Interest Paid | $   362.49 | $   362.49 |
| Interest Due | | |
| Late Charges | $    0 | |
| Late Charges Paid | $    0 | |
| Late Charges Due | $    0 | $6.208.75 |
| Total Due | | |
| Collection Cost @40% | $2,843.50 | |
| Collection Cost paid | $1,123.75 | |
| Collection Costs Due | $1,359.75 | $1,359.75 |

**Total Due**                                                $7,568.50

**Toback, Bernstein & Reiss LLP**
15 WEST 44TH STREET
NEW YORK, NEW YORK 10036



**Ahmad Keshavarz, Esq.**
**16 Court Street 26th Floor**
**Brooklyn, New York 11241**



i1241$0102 C030

# EXHIBIT G:

**The January 1, 2011 monthly billing statement demanding payment.**

# TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET

TWELFTH FLOOR

NEW YORK, NEW YORK 10036

——

(212) 869-2300

FACSIMILE: (212) 869-2303

ARTHUR M. TOBACK
BRIAN K. BERNSTEIN*
LEONARD S. REISS

*ALSO ADMITTED IN NJ
——
MARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 630, P.O. BOX 1160
FORT LEE, NEW JERSEY 07024

01/01/2011

Leilani M. Torres
324 Livingston Street Apt.1
Brooklyn, New York  11217-1035

| | | | |
|---|---|---|---|
| 12/02/2010 | Prior Principal Balance | 12,359.02 | |
| 12/02/2010 | Accrued Interest | 1,551.16 | |
| 01/01/2011 | Payment Due, per sched. | -.150.00 | |
| 01/01/2011 | Interest Charge @   9.00% | 92.69 | |
| | New Principal Balance | 12,359.02 | |
| 01/01/2011 | Payment Due | 1,500.00 | |

=======================================================================

PLEASE RETURN THIS PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE AND
INCLUDE ACCOUNT# ON YOUR CHECK-MADE PAYABLE TO TOBACK,BERNSTEIN & REISS,LLP

PAYMENT DUE : $1,500.00
AMOUNT ENCLOSED : $



Leilani M. Torres

# EXHIBIT H:

**The February 1, 2011 the monthly billing statement demanding payment.**

## TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET

TWELFTH FLOOR

NEW YORK, NEW YORK 10036

———

(212) 869-2300

FACSIMILE: (212) 869-2303

ARTHUR M. TOBACK
BRIAN K. BERNSTEIN*
LEONARD S. REISS

*ALSO ADMITTED IN NJ
———
MARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 630, P.O. BOX 1160
FORT LEE, NEW JERSEY 07024

02/01/2011

Leilani M. Torres
324 Livingston Street Apt.1
Brooklyn, New York  11217-1035

| | | |
|---|---|---|
| 01/02/2011 | Prior Principal Balance | 7,206.01 |
| 01/02/2011 | Accrued Interest | 362.49 |
| 02/01/2011 | Payment Due, per sched. | 150.00 |
| 02/01/2011 | Interest Charge @   5.00% | 30.03 |
| | New Principal Balance | 7,206.01 |
| 02/01/2011 | Payment Due | 1,350.00 |

===================================================================

PLEASE RETURN THIS PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE AND
INCLUDE ACCOUNT# ON YOUR CHECK-MADE PAYABLE TO TOBACK,BERNSTEIN & REISS,LLP

PAYMENT DUE : $1,350.00
AMOUNT ENCLOSED : $



Leilani M. Torres

# TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET

TWELFTH FLOOR

NEW YORK, NEW YORK 10036

(212) 869-2300

FACSIMILE: (212) 869-2303

ARTHUR M. TOBACK
BRIAN K. BERNSTEIN*
LEONARD S. REISS

*ALSO ADMITTED IN NJ

MARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 530  P.O. BOX 1160
FORT LEE, NEW JERSEY 07024

January 25, 2011

**BY FAX (877) 496-7809**

Ahmad Keshavarz, Esq.
16 Court Street, 26th floor
Brooklyn, NY  11241

Re:   Columbia University/Lelani M. Torres

Dear Mr. Keshavarz:

Reference is made to your letter dated January 21, 2011. The rules and regulation of the Perkins Loan program permit the collection charges of 40% of the principal, interest and late charges. Enclosed are copies of 34 CFR sections 674.47.

Federally funded student loans may be compromised by the debtor paying a lump sum payment of 90% of the total amount due.   The lump sum payment to settle this account is $6,811.65. (90% of $7,568.50)

After you have had a chance to review the documents, please contact the undersigned to arrange a repayment plan.

This notice is an attempt to collect a debt. Any information obtained will be used for that purpose.

Very truly yours,

Loraine Campbell
Legal Assistant

LC:mr

Encls.

S:\DOCS\LC-Columbia\Attorney Letters\Keshavarz, Ahmad.doc

### Reasonable Collection Costs
34 CFR 674.45(e)(3)

For loans referred to a collection agency on or after July 1, 2008, collection costs charged the borrower may not exceed:

- first collection effort—30% of the principal, interest, and late charges collected;

- second and subsequent collection efforts—40% of the principal, interest, and late charges collected;

- for collection efforts resulting from litigation, 40% of principal, interest, and late charges collected, plus court costs.

### Charging costs to the fund
34 CFR 674.47

### Collection costs for loans made from 1981 through 1986

For loans made from 1981 through 1986, many promissory notes contain a limitation on the amount of costs that can be recovered from the borrower (25% of the outstanding principal and interest due on the loan). As this provision has not been applicable since the beginning of the 1987-1988 award year. If these borrowers ask for new advances, the Department strongly encourages schools to issue new promissory notes without this provision and to require the provisions of the new note to apply to repayment of previous advances. The borrower will then be liable for all collection costs on all of his or her outstanding loans borrowed under this program. (However, the advances made prior to the signing of the new note do not qualify for new deferment and cancellation benefits.

Case 1:11-cv-01368-VVP   Document 1   Filed 03/21/11   Page 39 of 42 PageID #: 39

§674.44  Address searches.

(a) If mail, other than unclaimed mail, sent to a borrower is returned undelivered, an institution shall take steps to locate the borrower. These steps must include—

(1) Reviews of records in all appropriate institutional offices;

(2) Reviews of telephone directories or inquiries of information operators in the locale of the borrower's last known address; and

(3) If, after following the procedures in paragraph (a) of this section, an institution is still unable to locate a borrower, the institution may use the Internal Revenue Service skip-tracing service.

(b) If an institution is unable to locate a borrower by the means described in paragraph (a) of this section, it shall—

(1) Use its own personnel to attempt to locate the borrower, employing and documenting efforts comparable to commonly accepted commercial skip-tracing practices; or

(2) Refer the account to a firm that provides commercial skip-tracing services.

(c) If the institution acquires the borrower's address or telephone number through the efforts described in this section, it shall use that new information to continue its efforts to collect on that borrower's account in accordance with the requirements of this subpart.

(d) If the institution is unable to locate the borrower after following the procedures in paragraphs (a) and (b) of this section, the institution shall make reasonable attempts to locate the borrower at least twice a year until—

(1) The loan is recovered through litigation;

(2) The account is assigned to the United States; or

(3) The account is written off under §674.47(g).

(Authority: 20 U.S.C. 424, 1087cc)

[52 FR 45585, Nov. 30, 1987, as amended at 59 FR 61412, Nov. 30, 1994]

§674.45  Collection procedures.

(a) The term "collection procedures," as used in this subpart, includes that series of more intensive efforts, includ-

ing litigation as described in §674.46 to recover amounts owed from defaulted borrowers who do not respond satisfactorily to the demands routinely made as part of the institution's billing procedures. If a borrower does not satisfactorily respond to the final demand letter or the following telephone contact made in accordance with §674.43, the institution shall—

(1) Report the defaulted account to any one national credit bureau; and

(2)(i) Use its own personnel to collect the amount due; or

(ii) Engage a collection firm to collect the account.

(b) An institution shall report to the same national credit bureau to which it originally reported the default, according to the reporting procedures of the national credit bureau, any changes in account status and shall respond within one month of its receipt to any inquiry from any credit bureau regarding the information reported on the loan amount.

(c)(1) If the institution, or the firm it engages, pursues collection activity for up to 12 months and does not succeed in converting the account to regular repayment status, or the borrower does not qualify for deferment, postponement, or cancellation on the loan, the institution shall—

(i) Litigate in accordance with the procedures in §674.46;

(ii) Make a second effort to collect the account as follows:

(A) If the institution first attempted to collect the account using its own personnel, it shall refer the account to a collection firm.

(B) If the institution first attempted to collect the account by using a collection firm, it shall either attempt to collect the account using institutional personnel, or place the account with a different collection firm; or

(iii) Submit the account for assignment to the Secretary in accordance with the procedures set forth in §674.50.

(2) If the collection firm retained by the institution does not succeed in placing an account into a repayment status described in paragraph (c)(1) of this section after 12 months of collection activity, the institution shall require the collection firm to return the account to the institution.

558

[right column — heavily obscured]

... If the institution is una... ... the loan in repayment ... in paragraph (c)(1) of th... ... after following the procedu... ... graphs (a), (b), and (c) of th... ... the institution shall conti... ... annual attempts to collect ... borrower until—

... The loan is recovered throug... ... tion;

... The account is assigned to ... ...ited States; or

... The account is written off ...4.47(g).

...(1) Subject to §674.47(d), the ...ion shall assess against the ...er all reasonable costs incurr...institution with regard to a ...igation.

... The institution shall dete... ... amount of collection costs ...l be charged to the borrower fo... ...s required under this section ...74.44, 674.46, 674. 48, and 674.49, ...either—

... Actual costs incurred for thes ...h with regard to the individual ...er's loan; or

...i) Average costs incurred for s ... actions taken to collect loan ...ilar stages of delinquency.

... The Fund must be reimburse ...lection costs initially charge ... Fund and subsequently paid by ...ower.

...(1) An institution shall ensure ... funds collected from the borro

... Deposited in interest-bearing b ...unts that are—

... insured by an agency of the ... Government; or

... Secured by collateral of rea... ... equivalent value; or

... Invested in low-risk income-... ...ing securities, such as obligati... ...ed or guaranteed by the Uni... ...tes.

...) An institution shall exercise ...r of care required of a fiducia... ...h regard to these deposits and ...ments.

...) Preemption of State law. The pro... ...s of this section preempt any Sta... ...e including State statutes, regul... ...or rules, that would conflict w... ...inder satisfaction of the requir

ing litigation as described in §674.45, to recover amounts owed from defaulted borrowers who do not respond satisfactorily to the demands routinely made as part of the institution's billing procedures. If a borrower does not satisfactorily respond to the final demand letter or the following telephone contact made in accordance with §674.43(f), the institution shall—

(1) Report the defaulted account to any one national credit bureau; and

(2)(i) Use its own personnel to collect the amount due; or

(ii) Engage a collection firm to collect the account.

(b) An institution shall report to the same national credit bureau to which it originally reported the default, according to the reporting procedures of the national credit bureau, any changes in account status and shall respond within one month of its receipt to any inquiry from any credit bureau regarding the information reported on the loan amount.

(c)(1) If the institution, or the firm it engages, pursues collection activity for up to 12 months and does not succeed in converting the account to regular repayment status, or the borrower does not qualify for deferment, postponement, or cancellation on the loan, the institution shall—

(i) Litigate in accordance with the procedures in §674.46;

(ii) Make a second effort to collect the account as follows:

(A) If the institution first attempted to collect the account using its own personnel, it shall refer the account to a collection firm.

(B) If the institution first attempted to collect the account by using a collection firm, it shall either attempt to collect the account using institutional personnel, or place the account with a different collection firm; or

(iii) Submit the account for assignment to the Secretary in accordance with the procedures set forth in §674.50.

(2) If the collection firm retained by an institution does not succeed in placing an account into a repayment status described in paragraph (c)(1) of this section after 12 months of collection activity, the institution shall require the collection firm to return the account to the institution.

(d) If the institution is unable to place the loan in repayment as described in paragraph (c)(1) of this section after following the procedures in paragraphs (a), (b), and (c) of this section, the institution shall continue to make annual attempts to collect from the borrower until—

(1) The loan is recovered through litigation;

(2) The account is assigned to the United States; or

(3) The loan is written off under §674.47(g).

(e)(1) Subject to §674.47(d), the institution shall assess against the borrower all reasonable costs incurred by the institution with regard to a loan obligation.

(2) The institution shall determine the amount of collection costs that shall be charged to the borrower for actions required under this section, and §§674.44, 674.46, 674. 48, and 674.49, based on either—

(i) Actual costs incurred for these actions with regard to the individual borrower's loan; or

(ii) Average costs incurred for similar actions taken to collect loans in similar stages of delinquency.

(3) The Fund must be reimbursed for collection costs initially charged to the Fund and subsequently paid by the borrower.

(f)(1) An institution shall ensure that any funds collected from the borrower are—

(i) Deposited in interest-bearing bank accounts that are—

(A) Insured by an agency of the Federal Government; or

(B) Secured by collateral of reasonably equivalent value; or

(ii) Invested in low-risk income-producing securities, such as obligations issued or guaranteed by the United States.

(2) An institution shall exercise the level of care required of a fiduciary with regard to these deposits and investments.

(g) Preemption of State law. The provisions of this section preempt any State law, including State statutes, regulations, or rules, that would conflict with or hinder satisfaction of the require-

ments or frustrate the purposes of this section.

(Approved by the Office of Management and Budget under control number 1840-0581)

(Authority: 20 U.S.C. 424, 1087cc, 1091a)

[52 FR 45555, Nov. 30, 1987, as amended at 53 FR 49147, Dec. 6, 1988; 57 FR 32345, July 21, 1992; 59 FR 61412, Nov. 30, 1994; 62 FR 50848, Sept. 26, 1997]

§674.46 Litigation procedures.

(a)(1) If the collection efforts described in §674.45 do not result in the repayment of a loan, the institution shall determine at least annually whether—

(i) The total amount owing on the borrower's account, including outstanding principal, accrued interest, collection costs and late charges on all of the borrower's Federal Perkins, National Direct and National Defense Student Loans held by that institution, is more than $200;

(ii) The borrower can be located and served with process;

(iii)(A) The borrower has sufficient assets attachable under State law to satisfy a major portion of the outstanding debt; or

(B) The borrower has income from wages or salary which may be garnished under applicable State law sufficient to satisfy a major portion of the debt over a reasonable period of time;

(iv) The borrower does not have a defense that will bar judgment for the institution; and

(v) The expected cost of litigation, including attorney's fees, does not exceed the amount which can be recovered from the borrower.

(2) The institution shall sue the borrower if it determines that the conditions in paragraph (a)(1) of this section are met.

(3) The institution may sue a borrower in default, even if the conditions in paragraph (a)(1) of this section are not met.

(b) The institution shall assess against and attempt to recover from the borrower—

(1) All litigation costs, including attorney's fees, court costs and other related costs, to the extent permitted under applicable law; and

**§ 674.47**

(2) All prior collection costs incurred and not yet paid by the borrower.

(c)(1) An institution shall ensure that any funds collected as a result of litigation procedures are—

(i) Deposited in interest-bearing bank accounts that are—

(A) Insured by an agency of the Federal Government; or

(B) Secured by collateral of reasonably equivalent value; or

(ii) Invested in low-risk income-producing securities, such as obligations issued or guaranteed by the United States.

(2) An institution shall exercise the level of care required of a fiduciary with regard to these deposits and investments.

(d) If the institution is unable to collect the full amount owing on the loan after following the procedures set forth in §§ 674.41 through 674.46, the institution may—

(1) Submit the account to the Secretary for assignment in accordance with the procedures in § 674.50; or

(2) With the Secretary's approval, refer the account to the Department for collection.

(Authority: 20 U.S.C. 424, 1087cc)

[52 FR 45555, Nov. 30, 1987, as amended at 59 FR 61412, 61415, Nov. 30, 1994]

**§ 674.47  Costs chargeable to the Fund.**

(a) *General: Billing costs.* (1) Except as provided in paragraph (c) of this section, the institution shall assess against the borrower, in accordance with § 674.43(b)(2) the cost of actions taken with regard to past-due payments on the loan.

(2) If the amount recovered from the borrower does not suffice to pay the amount of the past-due payments and the penalty or late charges, the institution may charge the Fund for only that unpaid portion of the cost of telephone calls to the borrower made pursuant to § 674.43 to demand payment of overdue amounts on the loan.

(b) *General: Collection costs.* (1) Except as provided in paragraph (d) of this section, the institution shall assess against the borrower, in accordance with §§ 674.45(e) and 674.46(b), the costs of actions taken on the loan obligation pursuant to §§ 674.44, 674.45, 674.46, 674.48 and 674.49.

(2) If the amount recovered from borrower does not suffice to pay amount on the past-due payments charges, and these collection cost institution may charge and Fund unpaid collection costs in accordance with paragraph (e) of this section.

(c) *Waiver: Late charges.* The institution may waive late charges against a borrower who repays the amount of the past-due payments loan.

(d) *Waiver: collection costs.* Before ing suit on a loan, the institution waive collection costs as follows:

(1) The institution may waive percentage of collection costs able to the amount then past-due loan equal to the percentage of past-due balance that the borrower pays within 30 days after the date which the borrower and the institution enter into a written repayment agreement on the loan.

(2) The institution may waive collection costs in return for a lump payment of the full amount of principal and interest outstanding loan.

(e) *Limitations on costs charged to Fund.* The institution may charge the Fund the following collection waived under paragraph (d) of this tion or not paid by the borrower:

(1) A reasonable amount for the of a successful address search requested in § 674.44(b).

(2) Costs related to the use of bureaus as provided in § 674.45(b)(1).

(3) For first collection efforts pursuant to § 674.45(a)(2), an amount does not exceed amount of principal, interest and charges collected.

(4) For second collection efforts suant to § 674.45(c)(1)(ii), an amount that does not exceed amount of principal, interest and charges collected.

(5) For collection costs resulting from litigation, including attorney fees, an amount that does not exceed the sum of—

(i) Court costs specified in 28 U.S 1920; and

(ii) Other costs incurred in bankruptcy proceedings in taking action required or authorized under § 674.49;

**Postsecondary Educ., Education**

Costs of other actions in bankruptcy proceedings to the extent that costs, together with costs described in paragraph (e)(5)(ii) of this section, do not exceed 40 percent of the amount of judgment obtained or tax; and

40 percent of the total amount recovered from the borrower in any other proceeding.

If a collection firm agrees to perform or obtain the performance of both collection and litigation services on an amount for both functions does not exceed the sum of 40 percent of the amount of principal, interest and late charges collected on the loan plus court costs specified in 28 U.S.C. 1920.

*Records.* For audit purposes, an institution shall support the amount of collection costs charged to the Fund appropriate documentation, including telephone bills and receipts collection firms. The documentation must be maintained in the institution's files as provided in § 674.19.

*Cessation of collection activity of defaulted accounts.* (1) An institution may cease collection activity on a defaulted account with a balance of less than $25 including outstanding principal, accrued interest, collection costs, and late charges, if the borrower has been billed for this balance in accordance with section 674.43(a).

(2) An institution may cease collection activity on a defaulted account with a balance of less than $200, including outstanding principal, accrued interest, collection costs, and late charges, if—

(i) The institution has carried out the due diligence procedures described in subpart C of the part with regard to the account; and

(ii) For a period of at least 4 years, the borrower has not made a payment on the account, converted the account to a regular repayment status, or applied for deferment, postponement, or cancellation on the account.

*Write-offs of accounts of less than $5.* (1) Notwithstanding any other provision in this subpart, an institution write off an account with a balance of less than $5, including outstanding principal, accrued interest, collection costs, and late charges.

560

561

Case 1:11-cv-01368-VVP Document 1 Filed 03/21/11 Page 42 of 42 PageID #: 42

If the amount recovered from th[e] [borr]ower does not suffice to pay [the am]ount on the past-due payments lat[e char]ges, and these collection costs, [the in]stitution may charge and Fund th[e] [u]nd collection costs in accordan[ce with] paragraph (e) of this section.

*Waiver: Late charges.* The insti[tution] may waive late charges assessed [again]st a borrower who repays the full [amou]nt of the past-due payments on [the loan.]

*Waiver: collection costs.* Before [br]uit on a loan, the institution ma[y waiv]e collection costs as follows:

The institution may waive the [perce]ntage of collection costs applica[ble t]o the amount then past-due on [a loan] equal to the percentage of the [past-]due balance that the borrowe[r pays] within 30 days after the date on [whic]h the borrower and the institution [enter] into a written repayment agree[ment] on the loan.

The institution may waive all col[lectio]n costs in return for a lump-sum [paym]ent of the full amount of principal [and interest outstanding on the loan.]

*Limitations on costs charged to the [borrower.]*

The institution may charge [against] und the following collection cost[s charge]d under paragraph (d) of this sec[tion] r not paid by the borrower:

[A] reasonable amount for the cos[t of un]successful address search require[d in §] 4.44(b).

[C]osts related to the use of credi[t bure] as as provided in §674.45(b)(1).

[F]or first collection efforts pur[suant] §674.45(a)(2), an amount that [does] not exceed 30 percent of the [amoun]t of principal, interest and late [charge] s collected.

[F]or second collection efforts pu[rsuant] to §674.45(c)(1)(ii), an amount [that do] es not exceed 40 percent of the [amoun]t of principal, interest and late [charge] s collected.

[F]or collection costs resulting [from] litigation, including attorney's [fees, a] n amount that does not exceed— [the am]ount of—

[C]ourt costs specified in 28 U.S.C. [1920.]

[O]ther costs incurred in bank[ruptcy] proceedings in taking action [requir]ed or authorized under §674.49.

[(i]ii) Costs of other actions in bank-[ru]ptcy proceedings to the extent that [th]ose costs, together with costs de-[scr]ibed in paragraph (e)(5)(ii) of this [s]ection, do [not exceed the total amount of judgment obtained on] the loan; and

[(iv) An amount not to total amount re]covered from the borrower in any other [pr]oceeding.

[(6] If a collection firm agrees to per-[fo]rm or obtain the performance of both [c]ollection and litigation services on a [l]oan, an amount for both functions [th]at does not exceed the sum of 40 per-[cent of the principal of original] inter-[e]st and late charges collected on the [l]oan, plus court costs specified in 28 [U].S.C. 1920.

[(f] *Records.* For audit purposes, an in-[st]itution shall support the amount of [c]ollection costs charged to the Fund [w]ith appropriate documentation, in-[cl]uding telephone bills and receipts [fr]om collection firms. The documenta-[t]ion must be maintained in the institu-[ti]on's files as provided in §674.19.

[(g)] *Cessation of collection activity of de-[fa]ulted accounts.* (1) An institution may [c]ease collection activity on a defaulted [a]ccount with a balance of less than $25, [in]cluding outstanding principal, ac-[cr]ued interest, collection costs, and [la]te charges, if the borrower has been [b]illed for this balance in accordance [w]ith section 674.43(a).

[(2] An institution may cease collec-[t]ion activity on a defaulted account [w]ith a balance of less than $200, includ-[i]ng outstanding principal, accrued in-[te]rest, collection costs, and late [c]harges, if—

[(i)] The institution has carried out [th]e due diligence procedures described [i]n subpart C of the part with regard to [th]is account; and

[(ii)] For a period of at least 4 years, [th]e borrower has not made a payment [o]n the account, converted the account [t]o regular repayment status, or applied [f]or a deferment, postponement, or can-[c]ellation on the account.

[(h)] *Write-offs of accounts of less than [$]5.* (1) Notwithstanding any other pro-[v]ision in this subpart, an institution [m]ay write off an account with a bal-[a]nce of less than $5, including out-[st]anding principal, accrued interest, [c]ollection costs, and late charges.

(2) An institution that writes off an account under this paragraph may no longer include the amount of the ac-count as an asset of the Fund.

(Approved by the Office of Management and Budget under control number 1840-0581)

(Authority: 20 U.S.C. 424, 1087cc)

[52 FR 45555, Nov. 30, 1987, as amended at 57 FR 32346, July 21, 1992; 57 FR 60705, Dec. 21, 1992; 59 FR 61412, Nov. 30, 1994; 60 FR 61815, Dec. 1, 1995]

§674.48 Use of contractors to perform billing and collection or other pro-gram activities.

(a) The institution is responsible for ensuring compliance with the billing and collection procedures set forth in this subpart. The institution may use employees to perform these duties or may contract with other parties to per-form them.

(b) An institution that contracts for performance of any duties under this subpart remains responsible for com-pliance with the requirements of this subpart in performing these duties, in-cluding decisions regarding cancella-tion, postponement, or deferment of re-payment, extension of the repayment period, other billing and collection matters, and the safeguarding of all funds collected by its employees and contractors.

(c) If an institution uses a billing service to carry out billing procedures under §674.43, the institution shall en-sure that the service—

(1) Provides at least quarterly, a statement to the institution which shows—

(i) Its activities with regard to each borrower;

(ii) Any changes in the borrower's name, address, telephone number, and, if known, any changes to the borrow-er's Social Security number; and

(iii) Amounts collected from the bor-rower;

(2) Provides at least quarterly, a statement to the institution with a listing of its charges for skip-tracing activities and telephone calls;

(3) Does not deduct its fees from the amount is receives from borrowers;

(4)(i) Instructs the borrower to remit payment directly to the institution;

PAGE 07    TOBACKHYMANBERNSTEIN    21286923303    16:31    01/25/2011