UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Leilani Torres** § | |
| **On behalf of herself and all others similarly situated** § | Case No.: 1:11-cv-01368-NGG -VVP |
|     **Plaintiff** § | |
| **v.** § | |
| **Toback, Bernstein & Reiss LLP** § | |
| **Loraine Campbell** § | |
| **Arthur M. Toback** § | |
| **Brian K. Bernstein** § | |
| **Leonard S. Reiss** § | |
| **John Does 1 – 10** | |
|     **Defendants** § | |

**PLAINTIFF'S MOTION TO COMPEL PURSUANT TO DE 26 (NET WORTH, RETAINER AGREEMENT, AND PRIVILEGE LOG), AND MEMORANDUM IN SUPPORT**

Pursuant to DE 26, Plaintiff LEILANI TORRES, files this above referenced motion, and in support would show as follows.

### A.  PROCEDURAL HISTORY

1. On March 21, 2011, Plaintiff filed this class action suit against Defendants for their violations of the Fair Debt Collection Practices Act.

2. On April 26, 2011 Defendants filed an Answer, asserting ten affirmative defendants [DE 09].

3. August 26, 2011 Plaintiff filed an original pre-motion letter to compel discovery responses [DE 16], to which Defendants filed a response in opposition on September 7, 2011 [DE 20]. On September 8, 2011, Plaintiffs filed a supplemental pre-motion letter to compel [DE 25], to which Defendants filed a response in opposition on September 15, 2011 [DE 27].

4. On August 26, 2011 Plaintiff filed a motion to file a First-Amended Complaint [DE 17].

1

Defendants filed a Response on September 1, 2011 [DE 19]. Defendants consented to the amendments of the class definition to expand from in-state to out of state consumers from whom Defendants were seeking to collect Perkins loans for one year from the date of the filing of the original complaint. Defendants would consent to amend to class to include consumers from whom Defendants sought to collect educational debts while Defendants did not have a debt collection license if Plaintiff would stipulate that the statute of limitations for those claims would run from the date of the filing of the letter motion seeking to amend, and not from the date of the filing of the original complaint.

5. On September 9, 2011, the Court held a status conference. The Court issued an order [DE 26] for Plaintiff to submit briefing as to the issues of 1) requiring net worth disclosures by each Defendant, 2) the production Defendants' of retainer agreement with Columbia University, 3) deficiencies of Defendants' privilege logs; and 4) relation back of Plaintiff's claims in her proposed Amended Complaint.

### B.  NET WORTH INFORMATION OF EACH DEFENDANT

6. Statutory damages in an FDCPA class action case are capped at "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. 1692k(a)(2)(B). Given that the net worth of "the debt collector" is an absolute cap on the award of statutory damages for the entire class, it is essential to get full, complete and independently verifiable information as to the net worth of each "debt collector" Defendant.

7. Consequently, Plaintiff has propounded discovery requests seeking the net worth of each Defendant, and the basis for the calculation of the net worth. Specifically:

> Interrogatory # 10: State your net worth and describe it detail how it was computed.
>
> RESPONSE: Defendants object to this demand as overly broad and unduly burdensome. In addition, Defendants object to this demand to the extent that it seeks confidential and/or proprietary information and not limited to subject matter, relevance to this claim or time period. Without waiving the general and specific objections set forth above, [Defendant Toback, Bernstein & Reiss] LLP's net worth is - $3,778.00. [that is, *negative* $3,778.00]

8.      Defendants refuse to disclose the net worth of any Defendant other than Defendant Toback, Bernstein & Reiss LLP (the "LLP). Defendants provide no basis for producing the net worth of one defendant but not all defendants.

9.      There is nothing in the text of the statute that supports Defendants' naked assertion that it need provide net worth information for one Defendant, and not for the other Defendants, and, further, it gets to unilaterally decide which Defendant to use. Accepting Defendants bare assertion would undermine the purpose of the FDCPA. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). See also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir.2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope").

10.     Given that the net worth of "the debt collector" is an absolute cap on the award of statutory damages for the entire class, accepting Defendants view would undermine the remedial purpose of the FDCPA by eviscerating the class wide statutory damage relief sought, particularly as Defendants have given a negative net worth for the LLP.

11.     The closest FDCPA class action case to the issue at bar is <u>Del Campo v. Am. Corrective Counseling Servs</u>., 2009 U.S. Dist. LEXIS 103771 (N.D. Cal. 2009). In <u>Del Campo</u>, Plaintiffs filed an FDCPA class action against a debt collection company and personally against the owners of the debt collection company who actively managed and controlled the company. The individual Defendants sought to stay discovery as to their personal assets and personal net worth until after a determination of their individual liability. The Court rejected this argument and ordered the individual owners to produce the information regarding their personal assets and personal net worth. <u>Id</u>. at * 10.

12.     Indeed, it is common in FDCPA class action litigation for the Court to order production of net worth information for each and every Defendant. <u>Trevino v. ABC Am., Inc.</u>, 232 F.R.D. 612, 617 (N.D. Cal. 2006) ("Accordingly, [all] defendants are ordered to produce complete annual financial statements for the past three years, including, but not limited to, balance sheets, and profit and loss statements with notes.").

### C.     RETAINER AGREEMENT

13.     Defendants admit they have a retainer agreement with Columbia University governing the collection of the debts at issue in this case but refuse to produce any part of it contending that the entire document is privileged.

14.     A party seeking to invoke the attorney-client privilege "must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." <u>United States v. Construction Prods. Research</u>, 73 F.3d 464, 473 (2d Cir. 1996). The privilege protects

communications between a client and an attorney but does not shield facts underlying the communications. Upjohn Co. v. United States, 449 U.S. 383, 395, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).

15.     Moreover, the Second Circuit case law is clear: "We have determined that in the absence of special circumstances client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice.") (citations omitted) Vingelli v. United States, 992 F.2d 449, 452 (2d Cir. 1993).

16.     Defendants do not even attempt to demonstrate any of the elements as to the attorney-client privilege, and, in any case, retainer agreements are not privileged in the Second Circuit absent extraordinary circumstances, which Defendants to not assert.

17.     The retainer agreement is relevant, if for no other reason, than to determine the collection fee Defendants charge Columbia. Any collection fee sought for the collection of a Perkins loan must be a "reasonable" *and* the "actual costs incurred," but no more than 25% or no more than 40%, depending on the year of the loan.

18.     If Defendants are charging Columbia, say, a 10% fee, then it is difficult to see how Defendants could assert that the "actual costs incurred" could be any more than 10%.[1]

19.     The retainer agreement may also delineate the responsibilities between Columbia and Defendants. Moreover, Defendants have specifically based its bona fide error affirmative defense

---

[1] This is not to say that the fee Defendants charge Columbia is controlling as to consumers. Defendants still must prove that any fee they sought was a "reasonable fee actually incurred." If Defendants have no record as to how much any attorney billed on each particular student's account, it is possible the only proof Defendants have as to a reasonable fee "actually incurred" is anything more than the court fees in filing the collection lawsuits, the service of process fees, and the postage charges for sending out the collection letters.

5

in part upon the information it obtained from Columbia. Specifically, Defendants answered interrogatory number 15 as to the basis of its bona fide error defense as follows:

> Interrogatory # 15. Describe your maintenance of procedures reasonably adapted to avoid violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*
>
> RESPONSE: The Fair Debt Collection Practices Act is made readily available to all employees and attorneys at LLP. In addition, LLP *reasonably relies upon the information and documentation provided to it by its clients/creditors when seeking to collect a debt on their behalf.* (emphasis added).

20.     In a reverse situation (where a debt collector client raised the advice it obtained from its debt collector law firm as the basis its bona fide error defense) courts have held that the communications between the attorney and client must be disclosed as defendants put the reliance on the communications at issue.  Ramirez v. Palisades Collection LLC, 2007 U.S. Dist. LEXIS 95972 (N.D. Ill. 2007) Similarly, communications must be disclosed if the debt collector seeks to rely upon the advice of its debt collection law firm as a basis for minimizing their liability for statutory damages by arguing that its violations were not intentional. Id. at * 3 ("To the extent that a defendant wishes to hold open the possibility that it will rely on an advice of counsel defense as to the willfulness of its actions, it must allow the plaintiff the opportunity to pursue discovery as to that defense. It is Palisades who has decided that a potential defense to this action is bona fide error and thus has placed its knowledge of the statute of limitations at issue.") (internal citations omitted)

21.     Specifically in the context of FDCPA litigation, courts routinely order the production of collection agreements, including retainer agreements with debt collection law firms. McCollough v. Johnson, Rodenberg & Lauinger, 2009 U.S. Dist. LEXIS 675 at * 2 (D. Mont. Jan. 6, 2009)

("Rather, the document is in the nature of an engagement letter between a client and a law firm. The document sets forth procedures upon which the signatories have agreed for communication between them in their efforts to service debts, and sets forth the fee arrangements for such services. As noted in the Court's prior Order, such information generally does not fall under the protection of attorney-client privilege.") (citing to Reiserer v. U.S., 479 F.3d 1160, 1165 (9th Cir. 2007); Tzanetis v. Weinstein & Riley, P.S., 2009 U.S. Dist. LEXIS 118387 at * 3 (D. Conn. Dec. 18, 2009) (ordering debt collection law firm to produce "all retainer agreements relating to any business or legal relationship that led to the sending to plaintiff the letters at issue in this case.")

### D.   PRIVILEGE LOG

22.     Attached and incorporated by reference is the 112 page Amended Privilege log produced by Defendants on September 8, 2011. While daunting in length, most of the objections fall into one of a few different categories, none of which satisfy Defendants' burden to demonstrate an attorney-client or workproduct privilege sufficient to withhold the designated documents.

23.     The first category are the documents identified under the column of "type of document" as "Document re: loan information." In conferring with opposing counsel, it is the understanding that these documents are basic account information regarding each person in the class: their name, address, the type of loan, the grace period of the loan, the interest rate, the late fees, the loan date, etc. The information being withheld are simple facts. As previously noted, the attorney-client privilege protects communications between a client and an attorney but does not shield *facts* underlying the communications. Upjohn Co. v. United States, 449 U.S. 383, 395, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). The fact that a consumer's loan agreement or billing history is conveyed by a creditor to an attorney does not take a document that is otherwise non-privileged and not attorney

work product and make it into a protected document. Any portions of the communication in which the creditor requests legal advice might be protected, but there is no indication in Defendants' privilege log that legal advice was being sought – only that non-privileged account history or documents were being transmitted.

24.     The second category are the documents identified under the column of "type of document" as "Draft of client's affidavit[s] re: claim against [consumer]." In conferring with opposing counsel, it appears that these documents are simply unsigned copies of the affidavits that Defendants filed with the collection lawsuits supporting the (inflated) amount alleged to be due. While perhaps duplicative of documents already produced, the fact that the documents are unsigned, does not make it privileged. Indeed, the draft was intended to be filed with courts in the collection lawsuits. Therefore, they were not "intended to be confidential" nor made for "made for the purpose of obtaining or providing legal advice."

25.     The third category are the documents identified under the column of "subject matter" as indicating that the information is "tuition information," "contact information," "borrower's personal information," "repayment of student loans," "repayment statue," "status of loan or account," "account information," "research into borrower's address or employment information," "credit report," "fax log report," "fax verification report" or "fax cover sheet." Nothing in any of these descriptions suggests – much less demonstrates – that this "made for the purpose of obtaining or providing legal advice" or "was intended to be and was in fact kept confidential." In any case, these are disclosures of simple facts, and the facts in an attorney client communication are not privileged.

26.     A fourth category of documents are "emails." Defendants have made a blanket designated

each and every email that included "contact information," "account information," "bills," loan or account "status," "repayment" status, "student financial records" or requests for transcripts as being privileged or attorney work-product. Defendants have also marked any stipulation or judgment attached to an email as privileged or attorney work-product. These are all non-privileged documents or information that Defendants are attempting to claim are now protected merely as a result of having been conveyed in an email or as an attachment to an email to an attorney. Unless something more substantial than contact information or billing records was conveyed, Defendants have not met their burden.

27. A fifth category of documents are designated "research" concerning CPLR or CFR rates of interest or regulations. These are not protected because, as previously indicated, Defendants have placed these representations at issue by raising the bona fide error defense that it "reasonably relies upon the information and documentation provided to it by its clients/creditors when seeking to collect a debt on their behalf." Defendants also seek to minimize their exposure for statutory damages by alleging that their violations were not intentional. See Ramirez, supra, at * 3 ("To the extent that a defendant wishes to hold open the possibility that it will rely on an advice of counsel defense as to the willfulness of its actions, it must allow the plaintiff the opportunity to pursue discovery as to that defense. It is Palisades who has decided that a potential defense to this action is bona fide error and thus has placed its knowledge of the statute of limitations at issue.") (internal citations omitted)

28. A sixth category of documents are identified as "invoices." An invoice for an amount due does not implicate the providing of legal advice. Also, the calculation of the collection costs actually incurred is an issue in this case to determine whether Defendants are inflating the

collection costs sought beyond that actually incurred.

### E.   RELATION BACK OF AMENDED COMPLAINT

29.   The undersigned has conferred further with opposing counsel today as to the issue of relation back of the amended complaint and believes he will reach an agreed stipulation as to this issue and will file a separate letter regarding this issue.

### F.   PRAYER

30.   For these reasons, Plaintiff prays for the above referenced relief, and for all relief in law and equity to which Plaintiff may be entitled.

Dated:  Brooklyn, New York
        October 25, 2011

Respectfully submitted,

/s/

Ahmad Keshavarz
ATTORNEY FOR PLAINTIFF
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com


Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: 212-248-7906
Fax: 212-248-7908
E-mail: brian@bromberglawoffice.com

### CERTIFICATE OF CONFERENCE

The undersigned has conferred with opposing counsel regarding the relief sought in this motion but agreement could not be reached. Most recently the undersigned

10

Last printed 10/25/2011 11:50:00 PM

spoke at length with opposing counsel regarding concerns regarding the privilege log assertions.

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Defendants by and through their attorneys of record
>Matthew J. Bizzaro
>Marian C. Rice
>L'Abbate, Balkan, Colavita & Contini, L.L.P.
>1001 Franklin Avenue
>Garden City, NY 11530
>Telephone: (516) 294-8844
>Fax: (516) 294-8202
>E-Mail: mbizzaro@lbcclaw.com
>
>co-counsel for Plaintiff
>Brian L. Bromberg
>Bromberg Law Office, P.C.
>40 Exchange Place, Suite 2010
>New York, NY 10005
>Tel: 212-248-7906
>Fax: 212-248-7908
>E-mail: brian@bromberglawoffice.com

Dated:  Brooklyn, NY
      October 25, 2011
       /s/
      Ahmad Keshavarz
      Attorney for Plaintiff