# BROMBERG LAW OFFICE, P.C.

Brian L. Bromberg (Admitted in NY & CA)
Jonathan R. Miller, Associate (Admitted in NY & MO)

40 Exchange Place, Suite 2010
New York, NY 10005
Phone: (212) 248-7906
Fax:    (212) 248-7908

March 5, 2014

Via ECF & First Class Mail
Honorable Viktor V. Pohorelsky, U.S.M.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Torres v. Toback, Bernstein & Reiss, LLP, et al.*
      EDNY, No. 11-cv-1368 (NGG) (VVP)

Dear Judge Pohorelsky:

My office, together with co-counsel, represents the plaintiff in the above-referenced class action brought under the Fair Debt Collection Practices Act,[1] which the parties have agreed to settle on a class basis.

I am writing to address Your Honor's concerns, raised during the conference held in Court on February 5, 2014, about whether there are *common* class issues in the above-referenced case that *predominate* over individual issues under Rule 23 as interpreted since the U.S. Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*.[2] Specifically, Your Honor was concerned whether there was a single question that, if answered, would resolve the entire case as to all class members. Should the Court consider two separate classes, there would no necessity of a single question going through both classes. Each class would have common questions that would predominate within each class, even if not over both classes. The two separate classes would be the "Perkins Loans" Class and the "Educational Debt" Class. These separate classes can be tried either separately or together without raising any conflicts.

The two settlement classes are currently defined as follows:

> A.   The "Perkins Loans Class": Those individuals to whom TB&R sent written communications between March 21, 2010 and March 21, 2011 that were not returned by the postal service as undelivered, which sought to collect a debt resulting from a Perkins loan, with an interest rate of 9% instead of 5% and/or a collection fee of 40%; and

---

[1] 15 U.S.C. § 1692, *et seq.*
[2] *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541 (2011).

1

> B. The "Educational Debt Class": Those individuals in New York City to whom TB&R sent written communications between August 26, 2010 to August 26, 2011 that were not returned by the postal service as undelivered, which sought to collect an educational debt, when TB&R was not licensed with the New York City Department of Consumer Affairs.[3]

The "Perkins Loans Class" consists of 109 persons identified by Defendants; the "Educational Debt Class" consists of 496 persons identified by Defendants. As discussed below, there is no conflict in the same named plaintiff or the same counsel representing each subclass since each is getting the full statutory damage award.

## I. Court Approval of Class Action Settlements – Generally

Rule 23(e) governs the settlement of class actions. The Rule, as amended in 2003, requires that "the court must approve any settlement, voluntary dismissal, or compromise of the claims ... of a certified class."[4] The court-approval requirement, as the advisory committee explained, is intended "to strengthen the process of reviewing proposed class-action settlements."[5] The Committee noted in particular that while "[s]ettlement may be a desirable means of resolving a class action ... court review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement."[6]

## II. Certification of Settlement Class – Rule 23(a) and (b)

Before reaching the merits of the proposed settlement, however, the court must first ensure that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). As the Second Circuit has stated, "Before certification is proper for any purpose – settlement, litigation, or otherwise – a court must ensure that the requirements of Rule 23(a) and (b) have been met."[7] One must

---

[3] *See* "Addendum to Class Action Settlement" (ECF# 69-2).
[4] Fed.R.Civ.P. 23(e).
[5] Fed.R.Civ.P. 23(e) advisory committee note 2003 amendments.
[6] *Id.*
[7] *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir.2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review."). *See also Reade–Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y.2006) ("Certification of a class for settlement purposes only is permissible and appropriate, provided [the]

keep in mind, however, that courts in this circuit employ a " 'liberal rather than restrictive construction' of Rule 23, 'adopt[ing] a standard of flexibility' in deciding whether to grant certification."[8]

The party seeking class certification bears the burden of establishing the existence of all four Rule 23(a) requirements, often referred to as the criteria of "numerosity, commonality, typicality, and adequacy."[9] "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."[10]

### A. The Rule 23(a) Requirements of commonality and adequacy

The Court and the parties have agreed that both classes meet three-out-of-four Rule 23(a) requirements, leaving only "commonality" to be determined. "The commonality requirement demands only that there be 'questions of law or fact common to the class.' "[11] Not all questions of law and fact need be common, but as the U.S. Supreme Court recently clarified, this requirement is not met merely because the putative class members allegedly "all suffered a violation of the same provision of law."[12] Indeed, it is not just the presence of common questions that matters, but the ability of the class action device to "resolve an issue that is central to the validity of each one of the claims in one stroke."[13] To this end, the Supreme Court explained:

> What matters to class certification is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.[14]

---

standards [under Rule 23(a) and (b)] are met.") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–21, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).
[8] *Reade–Alvarez*, 237 F.R.D. at 31 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997)) (additional citation omitted).
[9] See Fed.R.Civ.P. 23(a); *Amchem*, 521 U.S. at 613, 117 S.Ct. 2231.
[10] *Amchem*, 521 U.S. at 614, 117 S.Ct. 2231.
[11] See *Vega*, 564 F.3d at 1268 (quoting Fed.R.Civ.P. 23(a)(2)).
[12] See *Dukes*, 131 S.Ct. 2541, 2551.
[13] *See Id.*
[14] *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.Rev. 97, 132 (2009) (internal alterations omitted)).

The Rule 23(a)(2) commonality requirement is a low hurdle. "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do."[15] Here, this low hurdle is met. With respect to the "Perkins Loan Class," Defendants allegedly violated the FDCPA by, among other things, attempting to collect interest and collection fees for Perkins loans in an amount Plaintiffs claim Defendants were not permitted under the Perkins loan program. With respect to the "Educational Loan Class," Defendants allegedly violated the FDCPA by seeking to collect the Educational Class does not include people who received Perkins loans and other educational loans, while Defendants were not licensed as debt collectors as required by NYC Administrative Code 20-489. Resolution of the Perkins Loan Class issues in favor of Plaintiff will decide the case in favor of that Class; resolution of the licensing issue in favor of the "Education Loan Class" will decide the case in favor of that Class.

But as Your Honor noted, no one issue will resolve the case in favor of both Classes. If common issues do not predominate across the entire class, subclassing may facilitate meeting the prerequisites of Rule 23(b)(3).[16] Each subclass so created must independently satisfy the requirements of Rule 23(a) (*i.e.*, "commonality," "typicality," etc.).[17] Moreover, creation of a subclass must be shown to be "appropriate either to 'expedite resolution of the case by segregating a distinct legal issue that is common to some members of the existing class,' or to protect class members against intra-class conflicts, such as where 'class members assert divergent claims based on non-overlapping factual circumstances, harms and systemic failures.' "[18]

Here, dividing the consumers involved into two classes should help expedite resolution of the case by making it clear what needs to be proven and what each group of consumers is entitled to recover as damages. The members of the Perkins Loan Class need to show the violations contained on the face of each of the collection letters sent to the class members. Were this case not settling, these questions could be determined as a matter of law after the close of discovery. In addition, the members of the Perkins Loan Class would have to obtain the record of payments made to Defendants and calculate the overpayments of interest and collection costs. Finally, the Perkins Loan Class would be entitled to up to 1% of Defendants' net worth. In contrast, the members of the Educational Loan Class have only a one-issue case – that is, did Defendants violate the FDCPA by attempting to collect from consumers without being licensed by the New York City Department of Consumer Affair. If this is a violation, the only remaining question

---

[15] *Dukes*, 131 S.Ct. at 2566.
[16] Fed.R.Civ.P. 23(c)(5) ("*Subclasses*. When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.")
[17] *Pruitt v. Allied Chemical Corp.*, 85 F.R.D. 100, 118 (E.D.Va. 1980).
[18] *In re Pfizer Inc. Secur. Litig.*, 282 F.R.D. 38, 54 (S.D.N.Y. 2012) (quoting *Cassale v. Kelly*, 257 F.R.D. 396, 408-09 (S.D.N.Y. 2009)) (certification of subclass for insider trading claims proper because subclass needed to prove additional elements).

would be the amount of statutory damages up to 1% of Defendants' net worth. Thus, dividing these two classes should simplify the litigation for both judge and jury.

Nothing in *Dukes* would prohibit the practice, which is specifically endorsed in Fed.R.Civ.P. 23(c)(5). And case law seems to support this approach. For example, in the Southern District of Ohio case of *Hughes v. Cardinal Federal Sav. & Loan Ass'n*,[19] the Court certified two classes – a general Truth in Lending Act class and a subclass of borrowers with mortgage loan modification agreements, all of which contained the same disputed language. The court found commonality for both the parent class and the subclass. Even more important, the defendant asserted that the interests of the larger class and those of the sub-class were in conflict, but the court found this to be unsupported. In so doing, the court noted that "The interests of all the class members is to recover damages for alleged Truth-in-Lending violations and to prevent any violations in the future. Plaintiffs are well represented by counsel experienced in these type cases and we are confident that they will vigorously pursue this case to the benefit of all the class."[20]

Holdings like the one in *Hughes* are the rule – that is, there is a presumption of adequacy and lack of conflict. Thus, courts often find, with little discussion, no conflicts between named plaintiffs and class members.[21] The exceptions that prove the rule consist of unique cases in which there are unusual circumstances, such as evidence of actual animus towards the defendants concerning events that are entirely irrelevant to the class action pending before the court,[22] or where one of the

---

[19] *Hughes v. Cardinal Federal Sav. & Loan Ass'n*, 97 F.R.D. 653 (S.D.Ohio 1983).
[20] *Id.* at 655.
[21] *See, e.g.*, *Guarte v. Furniture Fair, Inc.*, 75 F.R.D. 525 (D.Md. 1977); *Kaminski v. Shawmut Credit Union*, 416 F.Supp. 1119 (D.Mass. 1976); *Manning v. Princeton Consumer Discount Co., Inc.*, 390 F.Supp. 320 (E.D.Pa. 1975), on reconsideration, 397 F.Supp. 504 (E.D.Pa. 1975), judgment aff'd, 533 F.2d 102 (3d Cir. 1976); *Joseph v. Norman's Health Club, Inc.*, 336 F.Supp. 307 (E.D.Mo. 1971); *Katz v. Carte Blanche Corp.*, 52 F.R.D. 510, 515 (W.D.Pa. 1971) ("In this case, the plaintiff's claims appear to be representative of the respective members of the class. If he successfully establishes the facts regarding the defendant's disclosures as he has alleged and the law is as he interprets it, then he will have advanced those claims which are typical of each of the respective members of the class which he represents. Further, we detect no interests of the plaintiff in the maintenance of this action which are in conflict with or inimical to those of the other members."), opinion supplemented, 53 F.R.D. 539 (W.D.Pa. 1971), order rev'd on other grounds, 496 F.2d 747 (3d Cir. 1974).
[22] *See, e.g.*, *Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65, 80-81 (E.D.N.Y. 2011) (Finding in a putative TILA class action against used car dealerships that the plaintiff, who had filed another unrelated lawsuit against the defendant, was an inadequate class representative: "Because plaintiff may have an animus towards defendants concerning events that are entirely irrelevant to the instant action

named plaintiffs was an employee of the law firm representing the class.[23] Both of these situations create clear conflicts.

But here, any potential conflicts are speculative. First, the cap on statutory damages for each class is the same – 1% of the Defendants' net worth – and the parties have stipulated to 2% or twice the maximum statutory damages. Whether the 2% is divided with 1% going to each class or 2% being divided among both classes combined is a matter that Plaintiff leaves to the discretion of the Court, although counsel believes that the fairest way of dividing up the 2% is by dividing it equally among all of the members of both classes. (The goal of statutory damages is both one of deterrence and simultaneously providing some rough justice for those who cannot prove up actual damages. Accordingly, an equal distribution would seem to serve both goals.)

Second, the fact that the parties have agreed on twice the maximum statutory damages for the classes eliminates any possible conflict of interest. After all, the Educational Loan Class is only entitled to statutory damages. Accordingly, the only open issue is the amount of the actual-damages recovery to the Perkins Loan Class. Because one class's recovery is no longer in play, no conflict exists.

### B. Rule 23(b) Requirements

"In addition to establishing the Rule 23(a) requirements, a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)."[24] In this case, Plaintiff moves under Rule 23(b)(3), which "permits class certification if 'the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.'"[25] These are commonly referred to as the predominance and superiority requirements.[26]

---

(which deals exclusively with the manner in which fees were reported to her), she has not demonstrated that she would be an adequate class representative who could decide procedural and tactical questions on a wholly objective basis, independent of her own special relationship with defendants.")
[23] *Schroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir. 1984) (representation by one of the named plaintiffs was inadequate when he was an employee of the law firm representing the class).
[24] *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir.2012); *see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir.2000).
[25] *Little*, 691 F.3d at 1304 (quoting Fed.R.Civ.P. 23(b)(3) (emphasis in original)).
[26] *See Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 496 (N.D.Ga.2006).

i. Predominance

Because resolving the claims of 603 consumers as a group would be superior to holding 603 individual trials, the focus of the Court's questioning logically relates to the predominance requirement. To satisfy the predominance requirement, the named plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof.[27] Thus, predominance requires not just the presence of common issues, but also that those common issues actually outweigh any individualized issues in the litigation. In this way, predominance is "far more demanding" than Rule 23(a)'s commonality requirement.[28] "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."[29]

a. The Classes

This case is about alleged violations of the FDCPA for Defendants' practice of, among other things, attempting to collect interest and collection fees for Perkins loans in an amount Plaintiffs claim Defendants were not permitted under the Perkins loan program. Plaintiff later amended her complaint to add a class of consumers from whom Defendants sought to collect other educational loans, while Defendants were not licensed as debt collectors as required by NYC Administrative Code 20-489.

If commons issues do not predominate across the entire class, subclassing may facilitate meeting the prerequisites of Rule 23(b)(3).[30] Each subclass so created must independently satisfy the requirements of Rule 23(a) (*i.e.*, "commonality," "typicality," etc.).[31]

b. Predominance is satisfied with respect to The "Perkins Loans Class"

As to the "Perkins Loans Class," predominance is satisfied. In order to prevail on an FDCPA claim, Plaintiff will need to show: (1) that Plaintiff was the object of a collection activity arising from consumer debt; (2) that Defendants are debt

---

[27] *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997).
[28] *See Id.* at 1005 (citation omitted).
[29] *Erica P. John Fund, Inc. v. Halliburton Co.*, ___ U.S. ___, 131 S.Ct. 2179, 2184, 180 L.Ed.2d 24 (2011).
[30] Fed.R.Civ.P. 23(c)(5) ("*Subclasses*. When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.")
[31] *Pruitt*, 85 F.R.D. at 118.

7

collectors as defined by the FDCPA; and (3) that Defendants engaged in an act or omission prohibited by the FDCPA.[32] With respect to the "Perkins Loans Class," Plaintiff claims that Defendants violated numerous provisions of the FDCPA by sending collection letters like those attached to the Amended Complaint as <u>Exhibits A-I</u>.

Plaintiff claims that the manner in which Defendants attempted to collect from the "Perkins Loans Class" was false, misleading, unfair, and unconscionable in violation of numerous sections of the FDCPA. Essentially, Defendants attempted to collect an interest rate of 9% when the Perkins Loans were capped at 5%, and sought to recover a collection fee of 40%, regardless of "costs incurred" in collection. Whether these practices – attempting to collect interest that exceeds the statutory cap and attempting to recover collection fees without a right at law or contract – violate the FDCPA can be resolved through generalized proof. These overriding questions are subject to common resolution, and establish predominance.

The Court would not have to engage in significant individual inquiries about the letters sent to each class member. Were the parties not settling, there might be individualized evidence concerning the actual costs incurred by Defendants in collecting from each member of the "Perkins Loans Class." Because this case is settling, the only individualized inquiry is the question of actual damages – that is: what interest, fees, and costs were collected from each class member in excess of the amounts that Plaintiff alleges Defendants were entitled to collect under the applicable law? But this inquiry can be resolved using the computer records maintained by Defendants and does not defeat predominance.

This was the precise conclusion reached by the Honorable Arthur D. Spatt in granting class certification in a remarkably similar case filed by one of Plaintiff's attorneys in this District. In a recent decision in *Annunziato v. Collecto, Inc.*,[33] Judge Spatt certified a class of 1,288 consumers from whom Collecto sought to collect tuition allegedly owed to the New York Institute of Technology. Among the claims, Annunziato sought to recover not only statutory damages, but to recover unlawful collection fees that Collecto collected from numerous class members in the amount of 42% of the consumers' alleged principal debt. In response to Collecto's claim that individual issues would predominate over class-wide issues, Judge Spatt observed as follows:

> In this case, the common question presented is whether the form letters sent by the Defendant violated numerous provisions of the FDCPA. In the Court's view, the non-common questions, such as the question of actual damages, are not more substantial than the common

---

[32] *Erickson v. General Elec. Co.*, 854 F.Supp.2d 1178, 1182 (M.D.Fla.2012).
[33] *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329 (E.D.N.Y. 2013).

question of whether the form letters were illegal. As such, predominance has been satisfied.[34]

Here, similarly, there are numerous common questions of law, and the resolution of these questions will have a direct impact on every class member's effort to establish liability.[35] This is sufficient to satisfy predominance.

### c. Predominance is satisfied with respect to the "Education Debt Class"

As to the "Education Debt Class," predominance is satisfied. With respect to this Class," Plaintiff claims that Defendants violated numerous provisions of the FDCPA by using written communications to attempt to collect debts from consumers without being licensed as a debt collection agency by the City of New York Department of Consumer Affairs.

The issue in this case is simple: whether Defendants sent written communications to consumers between August 26, 2010 to August 26, 2011 that were not returned by the postal service as undelivered, which sought to collect an educational debt, when they were not licensed with the New York City Department of Consumer Affairs. This overriding question is subject to common resolution, and establishes predominance.

Moreover, since Plaintiff is only attempting to collect statutory damages from the "Education Debt Class," there are no individual issues. Under the FDCPA, maximum damages available for a class action are determined by looking at 1% of the Defendants' net worth. And the amount of damages to be awarded to the Class – up to the 1% cap – is determined by looking at the Defendants' conduct. That is, the focus in an FDCPA class action is on the "frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional."[36]

Therefore, there are no individual issues to defeat predominance; there is just one question of law, and the resolution of this question will have a direct impact on every class member's effort to establish liability.[37] This is sufficient to satisfy predominance.

---

[34] *Id.* at 339-40.
[35] *See Collins v. Erin Capital Mgmt., LLC*, 290 F.R.D. 689, 699-700 (2013).
[36] 15 U.S.C. § 1692k(b)(2).
[37] *See Collins*, 290 F.R.D. at 699-700.

9

### III. Conclusion

For all of the foregoing reasons, Plaintiff submits that the settlement should be preliminarily approved on behalf of the two classes: the Perkins Loan Class and the Educational Loan Class.

Respectfully,


/s/ Brian L. Bromberg

Brian L. Bromberg

cc: Matthew Bizzaro, Esq. (Via ECF)
     Marian Rice, Esq. (Via ECF)
     Ahmad Keshavarz, Esq. (Via ECF)