UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
TORRES,                        : 11-cv-01368-NGG-VVP
                   Plaintiff,  :
                               :
      - versus -               : U.S. Courthouse
                               : Brooklyn, New York
TOBACK, BERNSTEIN & REISS      :
      LLP et al,               : February 5, 2014
                   Defendant   :
------------------------------X


TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


<u>**For the Plaintiff**</u>:          **Brian L. Bromberg, Esq.**
                              Bromberg Law Office, P.C.
                              40 Exchange Place
                              Suite 2010
                              New York, NY 10005

                              **Ahmad Keshavarz, Esq.**
                              The Law Offices of
                              Ahmad Keshavarz
                              16 Court St, 26th Floor
                              Brooklyn, NY 11241



<u>**For the Defendant**</u>:          **Matthew J. Bizzaro, Esq.**
                              L'Abbate, Balkan, Colavita &
                              Contini, LLP
                              1001 Franklin Avenue 3rd Fl.
                              Garden City, NY 11530


<u>**Transcription Service**</u>:      <u>**Transcriptions Plus II, Inc.**</u>
                              740 Sharon Road
                              Copiague, New York 11726
                              <u>rl.transcriptions2@gmail.com</u>


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

```
                      Proceedings                    2
 1            THE CLERK:  Civil Cause for a Motion Hearing in
 2   11-cv-1368, Torres v. Toback, Bernstein, et al.
 3            Will counsel for the plaintiffs please state
 4   their appearance for the record.
 5            MR. KESHAVARZ:  Ahmad Keshavarz, the Law Office
 6   of Ahmad Keshavarz.
 7            MR. BROMBERG:  Brian L. Bromberg, Bromberg Law
 8   Office, P.C.
 9            MR. BIZZARO:  Matthew Bizzaro, L'Abbate,
10   Balkan, Colavita & Contini, LLP.
11            THE COURT:  All right.  Good morning.
12            I scheduled this conference to discuss the
13   class certification motion that has been made.  It's a
14   joint motion and it's a motion that contemplates a
15   settlement.
16            Based on what I know about the settlement and I
17   guess the defendants' net worth, the settlement certainly
18   appears to me to be reasonable.  The problem, however, is
19   that the class as it's defined, I'm not sure that it
20   meets the sort of technical requirements for class
21   certification.
22            There's several problems, it seems to me.  The
23   class consists of two relatively disparate groups of
24   individuals and there is no, as far as we could see it,
25   no question that's common to the entire class unless you
```

Proceedings                                                    3

1    state the question so broadly as to make it a question

2    that's not -- doesn't seem to fit within the parameters

3    of Supreme Court pronouncements on the matter.

4            And so in analyzing it, we're having a little

5    trouble articulating a truly common question that really

6    does apply across the entire class.  There are clearly

7    common questions that apply to that portion of the class

8    that is defined as having received a letter during the

9    period where the defendant was not licensed as a debt

10   collector.  And they're clearly, common I think -- I

11   think they're fairly easily identifiable common questions

12   that apply to the other group, the smaller group that

13   received letters that improperly sought to impose

14   interest and collection fees.  But they're if not much --

15   there's nothing that we saw that really crosses over

16   those two groups.

17           And that sort of effects the predominance issue

18   too, although I mean if you look at the individual common

19   questions that are applicable to each of the separate

20   classes, those would predominate enough that would

21   satisfy that requirement but you know, there is Supreme

22   Court precedent that says that -- now let me find the

23   exact -- right, this comes out of Dukes: "The claims must

24   depend upon a common contention that is capable of class-

25   wide resolution which means that the determination of its

Proceedings                                    4

1    truth or falsity will resolve an issue that is central to

2    the validity of each one of the claims in one stroke."

3              So it sort of suggests that there has to be at

4    least one question that's common to the whole class.  And

5    the question that, you know, whether they violated the

6    FTCPA is too broadly stated a question to constitute a

7    question that's common to the class.  I mean that would

8    basically satisfy class status reached by any kind of

9    case.  But in any event, that's one of the issues that I

10   wanted to discuss with you.

11             One of the solutions to that is to have some

12   classes but if you have some classes, then you have to

13   have separate class representatives, I think.  And if you

14   have separate class representatives, don't you have to

15   have separate class counsel -- subclass counsel?  So,

16   that was one thing that I wanted to invite your comment

17   on, as well.

18             Then I had a couple of other questions about

19   the distribution of the amount.  It's my memory from the

20   papers that although I don't know how fulsome a

21   exploration was made of the net worth of the Torres-

22   Toback (sic) firm.  I think I ordered some discovery with

23   respect to that.  You got some and my general memory is

24   that there -- the net worth is such that the $34,000

25   that's going to the class, going to some -- constitutes

Proceedings                      5

1   somewhere around two percent of the net worth.  Am I

2   right about that?  That's a number that's running around

3   in my head.

4           MR. KESHAVARZ:  Based on the numbers they've

5   given us, that's correct.

6           THE COURT:  Okay.  So, the settlement itself is

7   a generous settlement, I think.  I mean, it's a -- on its

8   -- I don't know if I made this observation, the

9   settlement seems to be quite a good settlement for the

10  plaintiffs.  And so you sort of -- I hate to recommend

11  denying the settlement because of some sort of, what I

12  would call, more technical than really, you know,

13  fundamental concerns about whether class certification's

14  appropriate, but -- so those are thoughts.

15          Maybe -- I did have a question about -- I mean,

16  the total settlement fund is something like $47,000 or

17  $47,500; I did want to know a little bit more about why

18  the named plaintiff gets so much out of that amount.  So,

19  you can comment on that too, perhaps.

20          Give me thoughts or you're going to --

21  reactions.  I'm happy to hear from you on that -- on all

22  the various questions.

23          MR. BIZZARO:  I'll allow plaintiff's counsel to

24  begin.

25          MR. KESHAVARZ:  Well, as to one of the issues,

Proceedings                                6

1   I"m not sure if this will address your concern about

2   there being two classes.  What we're calling the

3   educational debt class which is people the law firm was

4   attempting to collect from while the law firm did not

5   have a debt collection license; that -- the Perkins class

6   is a subset of that class.

7            THE COURT:  Not entirely, is it?  I mean

8   because it covers a different time period.  The Perkins

9   class goes from March of 2010 to March of 2011.  The

10  educational debt class goes from August 2010 to August

11  2011.  We did think there might be some overlap, although

12  somewhere in the papers it's characterized there's 605

13  individuals in the class and then broken down between 496

14  in the educational debt class and 109 in the Perkins debt

15  class but then it occurred to us, there must be some

16  overlap -- at least some overlap between the two which

17  would reduce the overall number of class members.

18           MR. KESHAVARZ:  My understanding and opposing

19  counsel can correct me, my understanding is that

20  regardless if the educational class starts a few months

21  later or a number of months later, my understanding is

22  that it would be the same pool of persons because they

23  get one batch of debts to collect that are Perkins loans.

24  So, it's the same batch.  It's the same pool of people

25  they're collecting from

```
                        Proceedings                    7
```

1            And opposing counsel can correct me if I am

2   wrong but my understanding is that that pool of

3   plaintiffs, of class members, wouldn't change even if you

4   start the date a few months later because there's only

5   one universe of people they're collecting from.  That's

6   my understanding.

7            So, I don't think the educational debt class,

8   the fact that it starts shorter -- a little bit later

9   than the Perkins class, I don't think that makes a

10  difference in terms of the number of people.

11           MR. BIZZARO:  I'm just a little confused.  The

12  educational debt class are non-Perkins individuals.  We

13  agree on that; right?

14           MR. KESHAVARZ:  No.

15           THE COURT:  No.  That's the issue that we're

16  actually kind of discussing is how much overlap there is

17  between the two.  Clearly, it seems to me, anyone who

18  received a letter from Torres-Toback during the year

19  that's specified in your class certification motion --

20  let me back up.

21           There's about an eight-month overlap, the way I

22  calculate it, between the --

23           MR. BIZZARO:  Right.

24           THE COURT:  -- Perkins loan class -- I'll call

25  it a subclass for purposes of our discussion today --

```
                          Proceedings                    8
 1            MR. KESHAVARZ:  Okay.
 2            THE COURT:  -- subset -- let's call it a subset
 3   and the educational debt subset.  There's about an eight
 4   month overlap in terms of time.
 5            MR. BIZZARO:  Right.
 6            THE COURT:  During that period, any Perkins
 7   loan person -- any person who got a letter -- I should
 8   make it a little bit --
 9            MR. BIZZARO:  During the --
10            THE COURT:  The Perkins loan class is not
11   limited to New York City residents.
12            MR. BIZZARO:  Correct.
13            THE COURT:  An educational debt class is
14   limited to New York City.
15            MR. BIZZARO:  Correct.
16            THE COURT:  And so, any Perkins loan debtor who
17   lived in New York City and received a letter during the
18   eight month overlap period would have been both part of
19   the educational debt subset and the Perkins loan subset.
20   I don't know how big an overlap that is.  But clearly
21   there are people who are outside of that.  In other
22   words, there's Perkins loan people who at least as the
23   class is defined, would fall outside of the educational
24   debt subset.
25
```

Proceedings                                      9

1          MR. BIZZARO:  Right.

2          THE COURT:  So --

3          MR. BIZZARO:  The period you're referring to is

4    from March of 2010 to August of 2010.

5          THE COURT:  Right.  That period of time for the

6    Perkins loan group would be outside the education debt

7    class.

8          MR. BIZZARO:  Right.  Plaintiffs sought to

9    amend the complaint about I guess five months into the

10   lawsuit and rather than oppose their efforts to amend the

11   complaint, we reached an agreement whereby we had agreed

12   to allow them to amend the complaint, enlarge the class

13   but we wouldn't let it -- we did not agree to allow the

14   class to relate back to March of 2010.

15          So, the August of 2010 to August of 2011 are

16   non-Perkins individuals.  With respect to the five month

17   period, it's my understanding and I'll have to confirm

18   with my clients, but I'm pretty sure that all collection

19   efforts on Perkins loans were ceased once this lawsuit

20   was commenced.  I don't believe there would be any

21   additional Perkins people in between that five month time

22   period.

23          THE COURT:  I'm completely lost as to what

24   you're saying.  I guess you prefaced it by saying

25   something about an amendment of the complaint which is --

```
                      Proceedings                    10
```

1   I'm not sure -- you know, ultimately that doesn't affect

2   the analysis.  I'm just -- what we were talking about is

3   whether there is any overlap and if so, how much between

4   that subset of the class that have Perkins loan claims,

5   let's call it that, and that subset of the class that

6   have education debt claims.  You know, were there people

7   who received letters from Torres-Toback asserting higher

8   than allowable interest rates and collection fees and who

9   live in New York City who received letters after August

10  of 2010.

11          MR. BIZZARO:  My understanding is that those --

12  the subclass, the educational debt class I should call

13  it, are non-Perkins loans people.  Those are different

14  types of loans, not Perkins loans.  So, there would be no

15  overlap.

16          THE COURT:  Okay.  In other words -- but are

17  you saying that no one -- that none of the Perkins loans

18  letters -- none of the people receiving letters on the

19  Perkins loan group --

20          MR. BIZZARO:  Um-hum.

21          THE COURT:  -- received those letters after

22  August of 2010?

23          MR. BIZZARO:  Of the Perkins loans group?

24          THE COURT:  Yes.

25          MR. BIZZARO:  That's -- I'm a little confused

```
                        Proceedings                  11
```

1    myself.  I apologize.

2              THE COURT:  That's all right.

3              MR. BIZZARO:  I believe after March of 2011,

4    there were no more Perkins loans letters sent.

5              THE COURT:  I understand.  I understand.  But

6    we're talking about August of 2010.

7              MR. BIZZARO:  Okay.

8              THE COURT:  That's when the education debt --

9              MR. BIZZARO:  I see.  I apologize again.

10             THE COURT:  All right.

11             MR. BIZZARO:  It's just a little confusing.

12             THE COURT:  So, if anybody who received a

13   Perkins loan letter --

14             MR. BIZZARO:  Yes.

15             THE COURT:  -- and who lived in New York

16   City --

17             MR. BIZZARO:  Yes.

18             THE COURT:  -- received that letter after

19   August 10 or August of 2010, then they would have

20   received a letter that -- from Torres-Toback at a time

21   when Torres-Toback did not have a license to collect

22   debts in New York City.

23             MR. BIZZARO:  That is correct, your Honor, yes.

24             THE COURT:  So, they would be part -- they

25   should be or at least they would theoretically be part of

Proceedings                    12

1   that subset of the class that falls in both the Perkins

2   loan subset and the education debt subset.

3           MR. BIZZARO:  I could see that -- the argument;

4   yes, your Honor.

5           THE COURT:  Now maybe the way that discovery

6   proceeded and how you identified these people or you gave

7   out numbers of these people, you -- there is no overlap.

8   I don't know.  But in other words, I guess what I am

9   saying is the numbers that we've been given as to how

10  many people fall in each of those subclasses -- subsets

11  total 605.

12          MR. BIZZARO:  Um-hum.

13          THE COURT:  And in fact, that may be 605

14  different people notwithstanding -- so that you know,

15  that ultimately doesn't matter all that much.

16          MR. BIZZARO:  Um-hum.

17          THE COURT:  But I think Mr. Keshavarz was going

18  down that road to say that perhaps the class -- perhaps

19  everybody falls in both classes, but I don't think so.

20          MR. BIZZARO:  Right.

21          MR. KESHAVARZ:  I can --

22          MR. BIZZARO:  I apologize for the confusion,

23  your Honor.  Yes, I -- yes, there may be some people who

24  could fall into both classes based upon the fact at the

25  time the firm did not have a debt collection license;

Proceedings                                    13

1   yes.

2            THE COURT:  Yes.  But I don't know whether --

3   well, not that it matters all that much, but it's also

4   clear that there are people who don't fall into both.

5            MR. BIZZARO:  Yes.

6            MR. KESHAVARZ:  Because there would be people

7   who are collecting Perkins loans that are outside of New

8   York City?

9            THE COURT:  That's one or people who were --

10  they were seeking to collect some other kind of debt

11  which wasn't a Perkins loan debt but some other kind of

12  education debt, so that it didn't run afoul of the

13  Perkins loan limitations on whatever -- the contractual

14  limitations, I guess, which is the basis of the --

15           MR. BIZZARO:  Correct.  The larger group of

16  individuals are non-Perkins loan individuals.  They're

17  different types of educational loans.

18           MR. KESHAVARZ:  Well, if I may correct that.

19  Actually, it's both educational -- that all educational

20  debts.

21           THE COURT:  Understood.  But there are some

22  people who had education debt that was not Perkins loan

23  debt and therefore would fall outside of the Perkins loan

24  subset.

25           MR. KESHAVARZ:  Actually no, I rephrase that.

                         Proceedings                    14

1   There wouldn't be any loans that were Perkins loans

2   because the -- well, actually I'm not certain about that.

3            THE COURT:  We're not talking about just loans.

4   We're talking about education debt.

5            MR. BIZZARO:  The non-Perkins educational debt

6   are the group of 400-something people.  That is the --

7   those are the non-Perkins educational debt.  The 100

8   some-odd people are the Perkins debt -- Perkins loans

9   debt.

10           THE COURT:  Right.  no, I understand.  I

11  understand.  Look, now as I said there's an easy way

12  around it although it's not that easy because -- and

13  maybe you could satisfy me on this by doing a little

14  research but it's clear you can set up the different

15  subclasses in a case.

16           The problem that appears to us -- and we

17  haven't done exhaustive research, although my law clerk

18  has done some amount of research but what appears to us

19  is once you define subclasses, you need to have separate

20  class representatives.  Now, there is a bit of conflict

21  of interest between the classes by the way.  It's not --

22  I don't think it's that major but, you know, one subclass

23  being smaller than the other, that subclass might argue

24  that they are entitled to a full one percent of the net

25  worth.

Proceedings                    15

1          And since it would be divided among a smaller

2    group of people, they would have a larger pro rata share

3    of the settlement amount, so that let's take -- we've got

4    34,000.  Let's assume that that's two percent.  If you

5    divided that two percent in half, so that each subset got

6    one percent, then the Perkins loan subset would get a

7    bigger pro rata share than --

8          Now we're talking about only a few dollars

9    actually.  We're not talking about a big conflict of

10   interest.  So, it occurs there's that little conflict of

11   interest and so one might argue that they should be

12   separate class representative and separate class counsel,

13   so that they could articulate their class' concerns a

14   little bit -- you know, really articulate them.

15         Again, I know I'm not -- it's not that big a

16   deal because it's only a few dollars.  I think we're

17   talking about the difference between $50 as a statutory

18   recovery and $75 as a statutory recovery perhaps.  And I

19   might add that the education debt subset benefits by

20   having a larger pool like it is in your settlement.  They

21   get a bigger pro rata share than they would if they only

22   took their portion of one-half of the total fund, if you

23   follow what I am saying.  They get more.

24         On the other hand, the Perkins loan people get

25   a lot more benefit because they get the benefit of having

Proceedings                              16

1   a reconfigured debt.  So, they get a large benefit from

2   having that.

3           But anyway, we've looked at this pretty closely

4   as you can see --

5           MR. KESHAVARZ:  Yes.

6           THE COURT:  -- and I do have the ultimate

7   concern that the classes as now defined, it's difficult

8   to really articulate that they meet Rule 23(a) and Rule

9   23(b) requirements.

10          Now, I mean that's just my impression and

11  again, I am opening it up to you to tell me how you feel

12  about it.  I mean, the other way to do it is just

13  eliminate one of the subclasses.  I don't know if that

14  works or maybe you're satisfied having one representative

15  for each of the two subclasses but that almost makes --

16  if you follow what I am saying, I mean the -- having

17  Ms. Torres be the class representative of both subclasses

18  it's -- then why set up subclasses, if you're not going

19  to have separate class counsel -- subclass counsel for

20  each as I said; then why do that and go through that

21  ministerial step which has no consequence whatsoever.

22          I mean the other -- as I started out saying,

23  I'm pretty satisfied that this is a fairly beneficial

24  settlement for everybody.  The plaintiffs certainly get a

25  pretty good result out of this, given the parameters and

Proceedings                    17

1   so I sort of don't want to throw up a roadblock but it's

2   going to be -- I would have to acknowledge in any

3   recommendation, even if I recommended that the class be

4   certified, that there are real questions about whether

5   class certification is appropriate under Rule 23(a) and

6   (b).

7             So, my sort of preliminary conclusion is that I

8   would be prepared to recommend the settlement because I

9   think the settlement's ultimately good.  But at the same

10  time, would have to let Judge Garaufis know that the

11  classes as defined now are -- I mean the class as defined

12  now may not really meet Rule 23(a) and 23(b) requirements

13  as they've been articulated by the Supreme Court,

14  particularly in the more recent cases; you know, the

15  Dukes case saw the -- and the Supreme Court has just

16  generally been a little bit less sympathetic to class

17  action now --

18            MR. KESHAVARZ:  Putting it charitably.

19            THE COURT:  -- class certification.  Yes.  So,

20  let me ask you about how to justify that the plaintiff,

21  assuming it would be recommended, how the Court would

22  justify Ms. Torres getting it's almost -- I guess it's a

23  fourth -- more than a fourth of the total amount of cash

24  that's actually coming out.

25            MR. KESHAVARZ:  I'd be glad to.  There are a

Proceedings                                              18

1   number of things.  First, she's actually -- she has

2   overpaid to the law firm.  When you compare the amount

3   that they said she owed based on a nine percent interest

4   rate, which is impermissible, and a forty percent

5   collection fee which we assert was impermissible, based

6   on those numbers, they were telling her that she owed

7   $11,207.

8             Via the corrected accounting the defendants

9   have agreed to, reducing the interest from nine to five,

10  going back to -- I believe her loan was '86; you've got

11  to -- from nine to five percent and then reducing the

12  collection fee on top of that from forty to seven

13  percent, the total amount that she would owe is only

14  $4,674.  She's, in fact, overpaid by about $5,000.  She's

15  paid $6,700 in March 2011 and another 45 -- so, she's

16  paid over -- about $11,000 --

17            THE COURT:  Okay, but --

18            MR. KESHAVARZ:  -- and she's only owed -- she

19  was only owed $4,000.  She was supposed to pay $4,600

20  under the terms of the settlement.  So point being, she

21  suffered damages.

22            THE COURT:  Well, I understand that but I

23  thought that everybody in the Perkins loan class was

24  going to receive the benefit of having a recalculated

25  debt.

Transcriptions Plus II, Inc.

Proceedings                        19

1        MR. KESHAVARZ:  Well, that's true.  That's

2   true.

3        THE COURT:  So that to the extent -- I mean,

4   she was going to get that as a member of the class

5   anyway.

6        MR. KESHAVARZ:  Okay.

7        THE COURT:  Now it did occur to us that there

8   were claims that she had which are not part of the class

9   based on harassing phone calls and so to the extent that

10  there were psychological damages, maybe she is giving up

11  those claims by the settlement.

12       So, of course everybody else is too but they're

13  not being asserted as class -- on behalf of the class.  I

14  mean, is that -- I don't know.

15       MR. KESHAVARZ:  If I may continue?  Then the

16  other things are she has for a number of months prior to

17  our filing suit, she's come into my office on many

18  occasions with stacks of papers.  She's kept every piece

19  of paper since 1986; every single one.  And the only way

20  I was able to find out there are these rolling -- these

21  hidden fees because they were rolled in, you couldn't see

22  them, is to run spreadsheet analysis based on every piece

23  of paper she brought in.

24       So, she's devoted a lot of time, keeping the

25  papers, organizing them for me, telling me each payment

 1  she's made on what date and why.

 2          THE COURT:  Um-hum.

 3          MR. KESHAVARZ:  The amounts in each letter that

 4  was claimed that was owed -- we would not have been able

 5  to spot --

 6          THE COURT:  Okay.

 7          MR. KESHAVARZ:  -- the claim if it wasn't for

 8  her long period of time in organizing it, coming to my

 9  office repeatedly.  She turned down an offer of judgment

10  in beginning of the case of I believe around $5,000.  So,

11  she stuck with the class.

12          THE COURT:  Um-hum.

13          MR. KESHAVARZ:  She's put her own -- she put

14  the class interests in front of her own.  This case had

15  been filed in 2011.  It's been approximately what -- that

16  will be three years.  There will be deferred compensation

17  for that entire period of time while she's sticking with

18  the class and trying to move for certification and not

19  just settling out only for herself.

20          So, those are all factors I think that would

21  justify an increased incentive payment or whatever the

22  proper term would be because of her investment in time

23  and resources into this case.

24          THE COURT:  So, the argument and I think it's a

25  good one, is that she's not just a sort of figure-head

Proceedings                    21

1    plaintiff.  She really did carry the ball in pursuing the

2    case and in making the case possible.

3             MR. KESHAVARZ:  That's correct.

4             THE COURT:  Well, do you have any other

5    thoughts or do you want to have some time to perhaps

6    educate me a little further on the issues that I've

7    raised?  I mean, I'm --

8             MR. BROMBERG:  Your Honor?

9             THE COURT:  Give me just a moment.

10            MR. BROMBERG:  Oh, sure.

11            (Pause)

12            THE COURT:  Oh, by the way, one of the -- this

13   is entirely technical.  Your notice seems to be in error.

14   You talk about a total fund of $47,500, $13,000- -- I'm

15   looking at the first page and relief to the class --

16   $47,500, $13,500 of which goes to the class

17   representative, Ms. Torres.  And then it says the balance

18   of $34,250.  Well, the balance when you subtract $13,500

19   from $47,500 is $34.  So, I don't know who is going to

20   put up the 250 but the math is wrong.  So, I'm presuming

21   that must be $34,000.

22            MR. KESHAVARZ:  Yes.

23            THE COURT:  Let me see if there's something

24   else.

25            (Pause)

```
                    Proceedings                    22
 1          THE COURT:  Were all of the class -- this is
 2   more appropriate for Mr. Bizzaro.
 3          Mr. Bizzaro, was your client collecting only on
 4   behalf of Columbia?
 5          MR. BIZZARO:  Yes, your Honor.
 6          THE COURT:  All of the class members were
 7   Columbia students at one time, I gather.
 8          MR. BIZZARO:  That's correct, your Honor.
 9          THE COURT:  I don't know if that matters but I
10   was just curious as a matter of fact.
11
12          (Pause)
13          THE COURT:  Just to add this; the differences
14   in the claims between the two subsets, do -- I mean, the
15   claims themselves have different value, in the sense that
16   the education debt subset, their claim is a largely
17   technical claim.  It wasn't a collection of monies that
18   weren't otherwise owed.  And indeed, I think that there's
19   considerable on about whether that constitute -- the fact
20   that Torres-Toback didn't have a license actually
21   constitutes a violation of the FTCPA.  It seems like the
22   weight of authority actually says it's not, although
23   there's authority going both ways.
24          MR. KESHAVARZ:  If I may speak on that.  I
25   believe it was actually almost universal, as far as I
```

Proceedings                    23

1   know, maybe almost -- maybe actually universal.  If they

2   didn't have a debt collection license and they threatened

3   to do something that they're not allowed to do because of

4   the failure to have a debt collection license,

5   specifically threaten to file suit or actually filing

6   suit, that's really the demarcation line in the cases

7   that go no debt collection violation --

8           THE COURT:  Okay.

9           MR. KESHAVARZ:  -- or a debt collection

10  violation.  That's the demarcation.

11          THE COURT:  These did -- these guys did

12  threaten to file a lawsuit?

13          MR. KESHAVARZ:  Or actually filed a lawsuit.

14          THE COURT:  Or actually filed.

15          MR. KESHAVARZ:  Yeah.

16          THE COURT:  So, you would say that on that

17  basis that the weight of authority would favor your --

18  but nevertheless, the -- I mean it certainly appears to

19  me that the Perkins debt -- subset have the more valuable

20  claim in the sense that they actually out-of-pocket have

21  actual damages and -- of course the settlement does

22  acknowledge that and so it gives a valuable form of

23  relief to that.

24          But because these claims have somewhat

25  different values -- let's put it that way -- it calls

Proceedings                              24

1    into question the adequacy of representation where one

2    class representative seeks to represent both subclasses.

3    And that's something I think that has been highlighted in

4    several Second Circuit cases and even noted in --

5    certainly when there are important differences between

6    the -- any portions of the class, the Supreme Court has

7    also called into question.

8           But anyway, I guess that's just a --

9           MR. BIZZARO:  Your Honor, may I speak to that?

10          THE COURT:  You may.

11          MR. BIZZARO:  Just to clarify, with respect to

12   the Perkins class, some of these individuals never paid a

13   penny.  So not all of them are receiving actual damages.

14   I believe there's only -- by our calculations, only a

15   handful of people that paid more than what's owed under

16   the revised interest and collection fees.

17          So there will be a handful of people receiving

18   the amount overpaid but the majority of them either paid

19   nothing or paid less than that amount.

20          THE COURT:  Okay.  All right.  Well, that --

21   you know all these facts sort of assist in alleviating

22   the concern that there are real big differences in terms

23   of the subsets and that there are concerns about the fact

24   that they don't meet some of the technical requirements

25   of Rule 23 or not should not be fatal because ultimately,

Proceedings                    25

1   it does seem to me that the settlement serves everybody's

2   interests.

3           MR. BIZZARO:  Yes.  And all of the Perkins

4   class members will be receiving a corrected accounting.

5   If there was a judgment that was entered, I guess the

6   technical way of doing it that we've discussed is filing

7   a partial satisfaction of judgment.  So, if

8   hypothetically there's a judgment against John Doe for

9   $10,000, there would be a $5,000 partial satisfaction of

10  judgment filed -- just throwing numbers out there

11  hypothetically.

12          THE COURT:  Yes, understood.

13          MR. BIZZARO:  And whoever did not have a

14  lawsuit commenced against them or a judgment obtained

15  against them will receive correspondence stating that you

16  now owe X amount.

17          THE COURT:  All right.  And that's a -- any

18  such filing in a case where a judgment has been obtained,

19  that does has real value.

20          MR. BIZZARO:  Yes, I agree.

21          THE COURT:  Anyway -- well, I've articulated my

22  concerns.  If you have anything further you want to add,

23  you can do so now.  And if you want to file something in

24  response to what I've raised within a week or so, you can

25  do that.  I'm not going to require you to do that but I

Proceedings                                            26

1   have to consider where -- how we're going to deal with

2   this still because as I said, this --

3              MR. BIZZARO:  Brian or Ahmad, do you have a

4   position on this?

5              MR. BROMBERG:  Your Honor, we would like the

6   opportunity to submit some supplemental briefing.  I do

7   have some thoughts about Walmart v. Dukes.  That was a

8   very unusual case.  Basically, if I recall correctly, the

9   U.S. Supreme Court took a look at it and said you've got

10  a class that basically alleges that anyone who is the

11  subject of sexual discrimination or harassment isn't --

12  is a member of the class and is entitled to damages.  And

13  there wasn't any evidence of any sort of company-wide

14  policy with respect to the 20+ million who worked for

15  Walmart.

16             THE COURT:  It's clearly a whole different --

17             MR. BROMBERG:  This was a very --

18             THE COURT:  -- a whole different kind of case

19  and I mean, I don't know that -- and it wasn't a

20  settlement class.

21             MR. BROMBERG:  No.

22             THE COURT:  I mean, this was a --

23             MR. BROMBERG:  And that was my next point.

24             THE COURT:  Yes.

25             MR. BROMBERG:  You know, it wasn't a settlement

Proceedings                                27

1   class.  We have a settlement class here, so a lot of

2   those, you know -- there's case law saying that in

3   settlement classes, a lot of the concerns about

4   predominance and a lot of the concerns about

5   manageability sort of go to the side a little bit.

6          THE COURT:  I understand that but these are not

7   manageability issues.  And, in fact, there's significant

8   language in Supreme Court cases that says in settlement

9   classes, you know, while you might put a -- back burner

10  any manageability issues, the other issues still require

11  close attention and may even require closer attention in

12  a settlement context because -- well, they may even

13  require closer attention.  But in any event --

14         MR. BROMBERG:  There's also another issue here

15  which is that as I was saying about the Dukes case, you

16  have a situation where the entire class definition and

17  the entire statement of what the alleged violation was

18  sort of amorphous.  Anyone who has been subject to sexual

19  discrimination or harassment, you couldn't draw a line.

20         Here we've got very particular violations that

21  we can specify.  Here's the alleged violation.  Were they

22  required to be licensed?  If they were required to be

23  licensed, is that a violation of the FTCPA that gives

24  rise to statutory damages?  A very careful, narrow --

25         THE COURT:  And that's how I started out.

```
                        Proceedings                    28
 1            MR. BROMBERG:  Right.

 2            THE COURT:  We've got two subsets.  As to each

 3    of the subsets, I would have no problem finding that that

 4    subset has common questions of fact that predominate.

 5    And I mean since it would be a single violation, we have

 6    no question about adequacy of representation.

 7            The problem is that we've got two disparate

 8    subsets and that's where there seems from a technical

 9    standpoint, because there is no common question that goes

10    across both classes --

11            MR. BROMBERG:  Well --

12            THE COURT:  -- that starts -- and because the

13    nature of the claims are substantially different.  You

14    know, both of them arise from a letter but the letter --

15    the violation is a real different violation in one group

16    of letters from the other giving rise to different --

17    substantially different interests in the kind of recovery

18    that's appropriate.

19            Now the settlement meets the -- satisfies those

20    differences, at least -- each class is getting a good --

21    each subset of the class is getting a good result, it

22    seems to me.  So, as I said at the outset, my concern is

23    not the fairness of the overall settlement.  It's the

24    fact that there are some technical deficiencies or

25    technical problems that I need some satisfaction.  Either
```

1    that or I'll just have to make a final decision about

2    whether I recommend the settlement, notwithstanding that

3    -- or certification and then ultimately the settlement

4    preliminarily, notwithstanding that, you know, Rule 23(a)

5    has to be fudged a little bit.

6            MR. BROMBERG:  There are a couple of other

7    matters here.  For instance, there's the leading case on

8    the issues -- some of the issues here which was Keele v.

9    Wexler.  It's a Seventh Circuit case.  It's been followed

10   regularly in this circuit.

11           THE COURT:  Okay.  So bring it to my attention

12   in --

13           MR. BROMBERG:  I will.

14           THE COURT:  -- something that you -- I'm glad

15   to give you some time to put something in writing.  It

16   doesn't have to be real extensive but --

17           MR. BROMBERG:  Well, in Keele v. Wexler, the

18   class representative Keele, was allowed by the Seventh

19   Circuit to represent all the people in the class even

20   though Ms. Keele hadn't suffered actual damages, she had

21   the right to pursue both statutory damages and actual

22   damages on behalf of the other class members.  In other

23   words -- and so even though her damages were different,

24   the violation was the same.  Therefore, she had the right

25   to pursue those damages on behalf of everyone else.

Proceedings                    30

1          THE COURT:  Right, but here the violation is

2    not the same.  That's the difference.

3          MR. BROMBERG:  Well, she suffered both

4    violations if I recall correctly.

5          MR. KESHAVARZ:  She did.

6          MR. BROMBERG:  She did.

7          THE COURT:  She did.

8          MR. BROMBERG:  So, she's got standing to

9    represent both classes.

10          THE COURT:  That's not the issue either.

11          MR. BROMBERG:  Okay.

12          THE COURT:  The issue is the difference between

13    the two violations and how that effects the analysis

14    under Rule 23(a).

15          MR. BROMBERG:  Well, the other --

16          THE COURT:  Because if Keele -- Keele may have

17    -- there was a single type of violation that gave rise to

18    multiple or to different kinds of damages but there was a

19    single type of violation.  So, you have a common question

20    there.  There's no question; did the violation occur?

21    Was it a violation of the FTCPA?  Right?  Those are

22    common questions that go across the entire class.

23          Here we have two sets of violations and that's

24    the problem and I have to bridge that.  And there's no

25    clear overlap between the two types of violations, other

Proceedings                              31

1  than that they came out of a letter.  And I don't think

2  that that's enough.

3           MR. BROMBERG:  The statutory damages are an

4  interesting question because my understanding of

5  statutory damages is they serve two purposes; number one

6  is when you've got a straight letter violation or any

7  kind of violation for that matter, if the person hasn't

8  -- it's very hard to specify the actual damages.  So, the

9  statutory damages are sort of brought into give rough

10 justice.  To say you know what?  We know in these

11 situations where the only violation is a letter, it's

12 hard to specify what the damages are.  Therefore, we're

13 going to give you a little bit of money because we know

14 (a) you're going to have trouble proving the actual

15 damages; (b) figuring out a correct amount for that is

16 difficult and (c) we want a deterrent effect here.  We

17 want to make sure -- it's like the equivalent of a

18 parking ticket.  Everyone who parks in front of the fire

19 hydrant gets a ticket.

20           If the difference is a few dollars between

21 them, that's the nature of the remedies set forth in

22 6092(k).

23           THE COURT:  I'm not disagreeing with you.  I'm

24 not as concerned -- as I said, I'm not that concerned

25 about the fairness --

```
                        Proceedings                    32
 1            MR. BROMBERG:  Right.

 2            THE COURT:  -- of the settlement.  I'm not

 3    concerned that somebody is -- and any member of one

 4    subset that's not a member of the other is somehow

 5    getting less than they otherwise would get.  I mean,

 6    frankly my guess ultimately would be that if there were

 7    two subclasses and they really were separately

 8    represented by counsel, you'd probably end up with a

 9    settlement that's largely the same as the one that's here

10    anyway.

11            So, I'm not -- again, that's not --

12    highlighting some issues that we are not comfortable we

13    have an absolutely correct answer to in presenting to

14    Judge Garaufis a recommendation that the class

15    certification requirements that are annunciated by the

16    Supreme Court and in the rules are actually met.  But

17    I've articulated the concerns I have.

18            MR. BROMBERG:  Right.

19            THE COURT:  To the extent that you have

20    something that you can -- if you want to cite to me some

21    cases that may help me see past these issues, happy to

22    have you give me that.  I haven't made a final decision

23    about how I am going to deal with this.  I've sort of

24    given you a clue but anything you can do to help me would

25    be useful.
```

Case 1:11-cv-01368-VVP   Document 75   Filed 03/14/14   Page 33 of 40 PageID #: 874

```
1              MR. BROMBERG:  I think we absolutely need to
2   submit some additional briefing.
3              THE COURT:  Okay.  I don't want --
4              MR. BROMBERG:  The --
5              THE COURT:  It doesn't have to be extensive but
6   just, you know --
7              MR. BROMBERG:  Right.  I mean right now I'm
8   just riffling.  I need a little time to sit down and --
9              THE COURT:  Sure.
10             MR. BROMBERG:  -- go over everything.
11             THE COURT:  Absolutely.  Okay.  So, a week, two
12  weeks?
13             MR. KESHAVARZ:  Two weeks, your Honor.
14             THE COURT:  Okay.  So, we'll hold off doing
15  anything for two weeks.  We've got a substantial draft
16  already ready, so it's not a -- it's a matter of just
17  finishing it off with a final decision.
18             I don't think there's any other issue I had.
19  Let me just --
20             (Pause)
21             THE COURT:  The scope of the release that the
22  settlement would contemplate would go, it seems to me, to
23  all of the claims made in the complaint, even claims that
24  are not pursued as part of the -- that are not part of
25  the settlement class, if you follow what I am saying.
```

```
                         Proceedings                    34
```

1      I believe this is the -- part of the plaintiffs

2  claims here involve harassment in telephone

3  communications or something along that line.

4          MR. KESHAVARZ:  She didn't have harassment in

5  telephone communications.  She did have letters that

6  threatened -- that said there was a judgment entered when

7  there was no judgment entered.  And that court documents

8  that looked like court papers when they were

9  fabrications, they weren't court papers.  That's --

10         THE COURT:  And so the release would extend to

11  any claims like that, it seems to me and I'm not sure

12  that that would be appropriate in the circumstances since

13  -- I mean because the release, certainly for Ms. Torres,

14  would be appropriate.  She's entitled to do that.  But

15  the class would be precluded, if that's what's

16  contemplated by the scope of the release.  And I'm

17  looking --

18         MR. KESHAVARZ:  I believe the --

19         MR. BIZZARO:  I don't believe that's what's

20  being contemplated.

21         MR. KESHAVARZ:  Yeah, I believe if you look at

22  docket entry 93-3 (sic), page 13, item 35, the last

23  sentence beginning with roman numeral I, I believe the

24  claimant --

25         THE COURT:  93?  I'm sorry?

```
                    Proceedings                    35
```

1          MR. KESHAVARZ:  Let me start from the

2    beginning; docket entry 69-3 --

3          THE COURT:  Okay.

4          MR. KESHAVARZ:  -- page 13 of 30.

5          THE COURT:  Okay.

6          MR. KESHAVARZ:  Item number -- paragraph 35 --

7          THE COURT:  Got it.

8          MR. KESHAVARZ:  -- release to the class

9    members.  If you look at the last sentence, I believe the

10   class members are -- it's not the claims in the suit.

11   Those claims in the suit are further narrowed to the

12   calculation of the amount of the debt.  The claims

13   regarding unlicensed debt collection and anything -- a

14   violation related to those letters.  But other claims

15   they might have, not to those specific elements in the

16   complaint are preserved.

17         THE COURT:  Well the --

18         MR. KESHAVARZ:  So, retracting the very

19   specifics --

20         THE COURT:  -- sub little iii says "Claims

21   involving alleged violations of the FTCPA arising from or

22   related to the matters referenced in the documents

23   identified in the amended complaint of this lawsuit,"

24   which documents I presume are the letters that Ms. Torres

25   obtained, which letters had some of the things that you

Proceedings                                    36

1    were saying; that is, said there was a judgment entered

2    when no judgment was entered.  Said there was a lawsuit

3    filed or whatever, so that it seems to me that that

4    aspect of the release may be over broad.

5              MR. KESHAVARZ:  So if we limit it -- just so I

6    understand, your Honor --

7              THE COURT:  1 and 2, clearly.

8              MR. KESHAVARZ:  Got it.

9              THE COURT:  Because those are encompassed

10   within the class settlement.  Ms. Torres being here can

11   -- I mean, I suppose you could have her release all of

12   her claims but the class, it seems to me, would not.

13             MR. KESHAVARZ:  Yeah, we tried very hard to

14   limit the class' release --

15             THE COURT:  To what is --

16             MR. BROMBERG:  That's why we --

17             THE COURT:  -- yes, okay.

18             MR. BROMBERG:  Yeah, that's why we have for

19   instance, romanette V.

20             THE COURT:  Romanette V?  In the --

21             MR. BROMBERG:  Each class member reserves his

22   or her defenses.

23             THE COURT:  Right.

24             MR. BROMBERG:  We tried to --

25             THE COURT:  You mean talking about in 69(3).

```
                    Proceedings                    37
```

1              MR. BROMBERG:  Exactly.

2              THE COURT:  At Romanette V on in paragraph 35

3    of the --

4              MR. BROMBERG:  Right.  We tried our best to

5    keep the --

6              THE COURT:  Okay.

7              MR. BROMBERG:  -- class release as narrow as

8    possible.

9              THE COURT:  Well, if we do it to 1 and 2, I

10   think we've got no -- when we do it to the -- in, as you

11   call it, romanette i, sub (1) and (2), then I don't think

12   that we have any problem as a practical matter.  I doubt

13   that anybody's going to be bringing any claims now

14   anyway.

15             I had one other thought that just is relatively

16   minor but -- oh, one thing did strike me and there is a

17   requirement that anyone who wishes to have their

18   objection actually considered, even if they submit

19   something in writing, they have to actually appear in

20   person.  And so that any -- and I'm not sure I understand

21   why you are requiring that.  Do you follow what I am

22   saying?

23             MR. KESHAVARZ:  We have no problem eliminating

24   that requirement, your Honor.

25             THE COURT:  Yes.  I mean I think that in

Proceedings                                      38

1   fairness, if somebody for whatever reason, wants to file

2   an objection, they should be able to do that in writing

3   and not have to come here and have the Court consider it.

4           MR. KESHAVARZ:  That's fine.

5           THE COURT:  Okay.

6           MR. KESHAVARZ:  I don't have a --

7           THE COURT:  So there's not --

8           MR. BIZZARO:  I don't have an issue waiving

9   that either, your Honor.

10          THE COURT:  Okay.  All right.  So, we won't do

11  anything for the next couple of weeks.  If you want to

12  file something, we certainly will consider it and I think

13  that's all I have.

14          Mr. Bizzaro, do you have anything else you

15  wanted to say?

16          MR. BIZZARO:  Yes, the only other issue we

17  didn't discuss and I don't know if it's appropriate to

18  discuss it now is the what's going to be the largest part

19  of the settlement is the attorney's fees issue.  I mean,

20  we stipulated that we would attempt to resolve it amongst

21  ourselves or if not, a petition would be submitted to the

22  Court.

23          So, I just wanted to clarify your Honor had no

24  questions or comments about that portion of the

25  settlement.

```
                        Proceedings                    39
 1              THE COURT:  It's entirely appropriate.

 2              MR. BIZZARO:  Right. Okay.

 3              THE COURT:  Absolutely.  It's the best way to

 4   keep the settlement fund from being -- you know, disputes

 5   over attorney's fees to invade the settlement fund and

 6   otherwise affect those negotiations.

 7              MR. BIZZARO:  Right.

 8              THE COURT:  So, no I prefer -- it seems to me

 9   that's a fairer way to do it than to take it out of the

10   fund.

11              MR. BIZZARO:  All right.  Okay.  Thank you,

12   your Honor.

13              THE COURT:  All right.  Thank you.

14              MR. KESHAVARZ:  Thank you, your Honor.

15              MR. BROMBERG:  Thank you.

16              MR. BIZZARO:  Thanks.

17                   (Matter concluded)

18                        -o0o-

19

20

21

22

23

24

25
```

40

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **14th** day of **March**, 2014.

*Linda Ferrara*
Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.